[Crim. No. 4111. First Dist., Div. Two. Dec. 12, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. DENNIS LEROY MOULTON, Defendant and Appellant.

Lester W. Blodgett, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, Robert R. Granucci and Joseph I. Kelly, Deputy Attorneys General, for Plaintiff and Respondent.

KAUFMAN, P. J.—Dennis Leroy Moulton and his brother, Larry, were found guilty by a jury of two counts of burglary in the second degree. Dennis alone appeals and contends that the trial court erred in the introduction of certain evidence and that the district attorney committed prejudicial misconduct. There is no merit in either of these contentions.

Viewing the evidence in the light most favorable to the People, as we must on appeal from a jury verdict, it appears that about noon on Saturday, September 30, 1961, the appellant and his brothers, Larry and Mickey, went to Brady's Repair Shop just north of Crescent City in Del Norte County. Mr. Brady left about 12:30 p. m. before all of the repair work on Dennis' black and white D.K.W. was finished. Mr. Brady's son, Jim, and Mickey finished the work on the appellant's car; then Jim Brady put all the tools away, locked the shop and left at the same time as the appellant and his brothers, about 1 p. m. When Mr. Brady returned to his shop on Monday morning [October 2], he found that one of the windows had been broken and certain tools were scattered about the floor. Mr. Brady had been there for only a few minutes when Deputy Sheriff Black came in with some items and asked Mr. Brady whether they belonged to the shop. Mr. Brady identified a pair of tin snips, a sledge hammer, a ball peen hammer, a screw driver, a punch, as well as an iron bar, which he had taken out of Dewey Hansen's mowing machine the year before.

The deputy sheriff indicated that one screw driver, the sledge hammer, the punch and iron bar had been found on the floor of the Del Norte Ice and Cold Storage plant early Sunday morning in the investigation of a burglary, and the rest in the trunk of the appellant's car. Later the same day, when Mr. Brady's bookkeeper came in, she discovered that the check protector was also missing. Mr. Brady notified the sheriff's office, and the missing check protector was subsequently found underneath the seat of a vehicle parked in the appellant's backyard.

About 11:30 on the evening of September 30, 1961, Mr. Viggo Hoyer, a private patrol operator, in the course of his duties, was checking the doors of the Del Norte Ice and Cold Storage plant south of Crescent City. He found one of the plant doors open, entered and discovered someone had tampered with the safe. There was a warm acetylene torch and several tools on the floor, as well as insulation clay from the safe. He observed a small black and white foreign car out-

side the plant with its radiator warm and some tools in the open trunk. He immediately informed the deputy sheriff of what he had seen. Deputy Sheriff Butters arrived shortly thereafter and parked about 50 feet from the loading dock of the plant. He also saw the small black and white foreign car, lifted the open trunk lid and found a pair of tin snips, a ball peen hammer and a screw driver and informed Undersheriff Smallwood of what he had seen.

Undersheriff Smallwood noticed that the car was the only one in the area without frost on its windshield and that the motor was warm. As he found no registration slip on the steering post, he entered the car, opened the glove compartment and found a letter addressed to the appellant. He then proceeded to the appellant's home and asked his wife to have her husband contact him when he returned. The appellant's wife stated the appellant had gone downtown with his brother in his small black and white car. Undersheriff Smallwood remained in the vicinity of the Moulton house and waited until the appellant and his brother arrived in a cab. After talking with the cab driver and ascertaining that the driver had picked up the appellant and his brother at a service station across from the ice plant, he entered the house and arrested the appellant and his brother, Larry. The appellant and Larry had fire clay on their shoes identical to the insulation clay from the damaged safe at the ice plant.

The appellant and his brother told conflicting stories as to how the car happened to be in the area next to the ice plant. The appellant indicated that his car would not run at all. Subsequently, Undersheriff Smallwood found that the car operated without any difficulty or noise except for the reverse gear. The next morning, Sunday, October 1, Undersheriff Smallwood searched the trunk of the car and found the above mentioned tools and instructed his deputy to take them around to the various auto repair shops the first thing Monday morning to see if they could be identified.

The appellant and his brother, Larry, testified that Jim Brady had left the tools found in the car on the ground after locking the shop, and that they put the tools into their car and asked their younger brother, Mickey, who knew the Bradys, to return them. The appellant further testified that on the evening of September 30, they parked the car near the ice plant about 11:30 p. m. because it would not run and went to look for a mechanic. After an unsuccessful attempt, he decided to drive the car home but changed his mind when

he saw the police car parked nearby, because he was on probation from Oregon and was afraid of violating his probation.

The first argument on appeal is that the tools found in the trunk of the appellant's car and subsequently received in evidence were illegally obtained because they were discovered during a search conducted without a warrant and at a time when the officers had no probable cause to believe that the appellant had committed a felony. The contention is directed at both the activities of Mr. Hoyer and the activities of Deputy Sheriff Butters who saw the tools in the trunk of the appellant's car and Undersheriff Smallwood who entered the appellant's car after seeing no registration slip on the steering column. The appellant's contention is without merit. As to Mr. Hoyer, there is no question of an unlawful search, as he merely observed that which was in plain sight (*People* v. *Martin*, 45 Cal.2d 755 [290 P.2d 855]), and notified the authorities.

The record is silent as to whether the officers had a search warrant. Thus, it must be presumed that the seizure was lawful (*People* v. *Northrup*, 203 Cal.App.2d 470 [21 Cal.Rptr. 448] ; *People* v. *Smith*, 171 Cal.App.2d 568 [340 P.2d 640] ; *People* v. *Goldberg*, 152 Cal.App.2d 562 [314 P.2d 151]).

Furthermore, even in the absence of a search warrant, Undersheriff Smallwood had reasonable and probable cause to search the vehicle at the time he entered the car as he was aware of the fact that a burglary had recently been committed nearby, and the car had a warm motor and carried no registration (*People* v. *Simons*, 208 Cal.App.2d 83 [25 Cal.Rptr. 57] ; *People* v. *Anushevitz*, 183 Cal.App.2d 752 [6 Cal.Rptr. 785]). Furthermore, the search of the appellant's automobile was made after the arrest of the appellant. As the arrest was based on reasonable cause, the search of the automobile was lawful as reasonably incidental to the arrest (*People* v. *Burke*, 208 Cal.App.2d 149, 158 [24 Cal.Rptr. 912]).

The next argument on appeal is that the district attorney was guilty of prejudicial misconduct in his cross-examination of the appellant about his prior conviction. The appellant was charged with a prior felony which he admitted before trial. As the appellant chose to take the stand on cross-examination, the district attorney properly asked whether he had been convicted of a felony. Upon receiving an affirmative answer, he asked: "More than once?" The appellant replied negatively and the district attorney continued: "Q. Were

you not convicted of forgery in Hutchinson and spent time in Hutchinson, Kansas? A. Yes, sir. Q. You are paroled from there? A. No, sir—you say am I—— Q. You were paroled from there? A. Yes, sir. Q. Were you not convicted and spent time in LaTuna, Texas, for violating the Dyer Act? MR. APPEL: If the Court please, this is highly prejudicial. Mr. Degnan has a right only to ask one question and if it is answered in the affirmative that is all the right he has to do. He is going into all these things although the witness had admitted he was convicted of a felony. All this other, to go into it in detail in this way, is highly prejudicial. THE COURT: I think the answer was that he had been convicted and the question was asked, once, and he said yes, once only. MR. DEGNAN: He said only once. THE COURT: I think that would open up the—— MR. APPEL: I see; excuse me. Mr. DEGNAN: Q. Were you not convicted of the Dyer Act, that is taking a stolen car across the state line? A. Yes, sir; I was. Q. In 1958? A. Yes, sir. Q. And you were sentenced to three years on that? A. Yes, sir. Q. That was twice then? A. Well, the first one was a reformatory, in 1953. Q. You got one to ten years on that? A. Yes, sir. I was released in ten months.''

Appellant contends that the above quoted portion of the cross-examination was improper and highly prejudicial. We cannot agree. As appellant had admitted only one prior felony, the question was proper (*People* v. *Miller,* 188 Cal.App.2d 156 [10 Cal.Rptr. 326]). The length of his sentence was volunteered by the appellant as was the matter of the Oregon conviction which appellant raised on direct examination. Thus, the district attorney could question him about the Oregon conviction for the use of narcotics, even though a misdemeanor (*People* v. *Richardson,* 74 Cal.App.2d 528 [169 P.2d 44]). In view of the overwhelming evidence indicating the guilt of the appellant, we do not think that the questions by the district attorney constitute prejudicial error.

Judgment affirmed.

Shoemaker, J., and Agee, J., concurred.