G. Roy WELLER, Sr., Appellant,

v.

Harry E. RUSSELL, Superintendent, State Correctional Institution at Huntingdon, Huntingdon, Pennsylvania, Appellee.

No. 14183.

United States Court of Appeals
Third Circuit.

Submitted May 6, 1963.

Decided July 23, 1963.

G. Roy Weller, Sr., pro se.

Daniel E. Teeter, Gettysburg, Pa., for appellee.

Before McLAUGHLIN and FORMAN, Circuit Judges, and COOLAHAN, District Judge.

COOLAHAN, District Judge.

The appellant was convicted by a jury in the Court of Oyer and Terminer and General Jail Delivery of Adams County, Pennsylvania on a charge of burglary and larceny on February 12, 1960. He was sentenced to imprisonment for a term of 2½ to not more than 5 years. Said sentence was to commence at the expiration of a prior sentence of 2 to 4 years then being served by him upon his plea of guilty to attempted burglary, possession of burglar tools and carrying concealed deadly weapons, in Bedford County, Pennsylvania.

It would be well at this time to chronologically list the facts leading to the aforementioned sentences before discussing the proceedings before this Court.

The appellant appears here *in forma pauperis* and this Court has secured and reviewed all of the documents and records of the Adams County Court, Pennsylvania and its Court of Oyer and Terminer and General Jail Delivery, together with the documents, records and transcript of the testimony before the United States District Court for the Middle District of Pensylvania.

From these records it appears that on the night of June 25–26, 1958 the building and offices of the Gettysburg Furniture Company, Gettysburg, Adams County, Pennsylvania, was broken into. A large vault on the second floor of the building was entered; and a 200 lb. safe, allegedly valued at $50.00, together with $84.00 in currency, a Zeiss-Ikon Contax No. 2, 35 Millimeter Camera of the estimated value of $500.00 and a Weston Light Meter, Model 735, Serial #6264416, valued at $25.00 were stolen.

On April 11, 1959 at about 1:00 A.M., the petitioner was arrested by the Bedford police while attempting to enter a Bedford building. He was found to be in possession of certain burglar tools and an unlicensed loaded 25 calibre auto-

matic revolver. When interviewed by the police he stated he had hitch-hiked into Bedford with some unknown truck driver.

Upon being searched by the Bedford Police in connection with the occurrence, a set of keys was found attached to a key ring plate bearing a Maryland automobile license number. Though Weller denied driving into Bedford, upon investigation the police found a car in and about the area where he was arrested bearing the license number on the key ring plate. Finally the appellant admitted he drove into Bedford, but stated the car was his wife's and that she was also the owner of the revolver. A search was made of the automobile and the keys found on the appellant fitted the doors and the trunk of the car. In the trunk the police discovered a large collection of tools, gas mask, special goggles, five pairs of white cloth gloves, a box of ammunition which fitted the revolver, and a specially taped flashlight. Among the articles found was an instrument described by the police as a knob puller, which the appellant describes as a gear puller. The finding of the knob or gear puller focused suspicion upon the appellant with respect to the Gettysburg Furniture burglary of June 25–26, 1958. The Pennsylvania State Police were notified and comparisons were made between the knob or gear puller and the markings on the large vault door and knob. The police officers investigating the Gettysburg robbery had taken actual or life size photographs of the vault door, had retained the damaged pulled knob, and caused the markings on the vault door to be preserved until comparisons were established. The markings on the door fitted exactly with the knob or gear puller. A complaint and warrant was filed against the appellant for the Gettysburg burglary on April 30, 1959.

Subsequent thereto the Pennsylvania State Police obtained the assistance of Sgt. Grayson L. Wigfield of the Hagerstown, Maryland Police Department in applying for a search warrant [1] to search the defendant's home. The warrant was obtained and according to the testimony of Sgt. Wigfield, the same was executed on May 11, 1959 at 4:00 P.M. Eastern Standard Time, 5:00 P.M. Daylight Saving Time.

Sgt. Wigfield testified, (Tr.P.33) that he and the other police officers went to the home of the appellant while it was still daylight, knocked on the front door and the appellant's wife answered. Sgt. Wigfield testified that he knew Mrs. Weller and she knew him. He stated he told her he had a warrant to search the premises. The police officers were invited in to the living room where Sgt. Wigfield explained their purpose and read the application for the search warrant and the search warrant to her. He made inquiry as to whether or not the two articles mentioned in the warrant were in the house and stated that if she would produce them no search would be made. She told the police it was useless for them to make a search, for the articles mentioned were not in the house since her husband had been in the hospital at the time the Gettysburg Furniture Company was burglarized.

Testimony further indicated that after the warrant had been read to her she asked to read it herself, and that she did read the papers, including the affidavit for the search warrant. She then asked if she could call her attorney before a search was made. She telephoned her attorney, William E. Krehkenbaum, and when she returned to Sgt. Wigfield she said her attorney informed her she would have to allow the search. (Tr.P. 34). A search was made of the premises and eventually the camera and the light meter were found.

The articles seized were brought before the Magistrate as required by the warrant and Mrs. Weller was requested to appear on May 21st in the Magistrate's Court in Hagerstown. She was charged with receiving stolen property and was defended by her attorney, Wil-

1. See appendix.

liam E. Krehkenbaum. The charge was dismissed.

On August 17, 1959 the appellant was indicted by the Adams County Grand Jury and charged with the offenses of burglary and larceny occurring in Gettysburg on the night of June 25–26, 1958. On November 15, 1959 the appellant addressed a communication to the presiding Judge of the Court in Pennsylvania requesting an early trial. On November 21, 1959 the presiding Judge informed the appellant that no jury would be sitting in the County before February, 1960 and therefore he could not have a trial before that date unless he decided to plead guilty or be tried without a jury. In either event an earlier date could be arranged.

On February 3, 1960 the District Attorney of Adams County filed a petition with the Court wherein he stated that he was prepared to proceed with the trial during the February term inasmuch as the appellant and his wife had requested him to proceed with the disposition of the charges. By way of petition he requested an order to be issued upon the Warden of the State Correctional Institution at Rockview, where the appellant was serving a term for other offenses, to release the appellant so that he could stand trial.

The appellant requested the appointment of an attorney to defend him on the Adams County charges. Some dispute exists as to when the attorney was appointed. The appellant states in his affidavit for a writ of habeas corpus, P. 3 to the supplement thereof, "Court appointed counsel met petitioner for the first time at 7:30 P.M. the night before the trial, for one hour." The trial was held on February 11, 1960, but we find in the records before this Court that on February 10, 1960 at 1:30 P.M. his attorney filed in the Office of the Clerk of the Court a petition seeking the issuance of subpoenas for the attendance at the appellant's trial of witnesses who resided in Maryland. The subpoenas were issued, the witnesses appeared and testified, and this appellant stated before Judge Follmer (Tr.P.25) that it was he who gave the names of the witnesses he wished subpoenaed to his attorney.

On February 12, 1960 the appellant was found guilty by a jury and was sentenced to no less than 2½ nor more than 5 years, commencing at the end of the Bedford County sentence which he was then serving, having pleaded guilty to the offenses previously mentioned.

At the trial, it is alleged by the District Attorney of Adams County, no issue concerning an unlawful search and seizure was raised. The camera and the light meter with the identical numbers to the ones which were stolen from the Gettysburg Furniture Company and which were later found in the appellant's home in Hagerstown, Md., were introduced into evidence, together with the knob puller (Tr.P.4).

On July 1, 1961 the appellant filed an action in forma pauperis, only seeking certified copies of all Court records in this matter at the cost of the County, together with all records and the notes of the testimony.

On July 8, 1961, Judge Sheely, the Presiding Justice of the Court of Oyer and Terminer and General Jail Delivery of Adams County, Pennsylvania, indicated that no certified copy of any preliminary hearing notes or testimony could be furnished because no preliminary hearing was had. Appellant was further advised that a certified copy of the Maryland search warrant could not be furnished because that document was in the hands of the Maryland authorities, nor was the appellant entitled to a copy of the testimony by reason of his failure to request same within ninety days after the verdict as per 17 P.S. § 1802. Judge Sheely stated that all of the other records could be obtained by petitioner upon application to the Clerk.

The appellant never made application for a new trial, took no appeal from his conviction, and sought no further relief in the State Courts. He defends this upon the theory that he was without funds to pursue either an application for a new trial or an appeal.

On August 29, 1961 he filed a petition for a Writ of Habeas Corpus with the United States District Court for the Middle District of Pennsylvania. In pursuance of this application Judge Follmer appointed counsel for the appellant. In his petition he alleged "approximately 10 months prior to this trial (the trial in Adams County, Penn.) agents of the Pennsylvania State Police crossed into Maryland to relator's home town of Hagerstown, and together with police officers of that city, unlawfully entered and searched his home *without affidavit of probable cause or without a search warrant* and seized a camera and a light meter purported to have been stolen a year previously in Pennsylvania."

Upon examination, in the proceedings before Judge Follmer, the following questions were addressed to the appellant (Tr.P.10):

"Q. Just what is the basis of your complaint? Is it the use of an item illegally seized?

"A. A camera and light meter.

"Q. Are you complaining for any other cause or because the camera and light meter was seized without warrant?

"A. That is the main issue.

THE COURT: What other issue do you have?

THE WITNESS: I list certain things during the trial such as being held incommunicado in the Adams County Jail, and defense counsel, which represented me didn't get a chance to work on my case properly, and my wife during the trial wasn't permitted to assist in the defense, and it was important because I hadn't much opportunity to talk to her and with my counsel. (His attorney has never stated he was not prepared to try the case.)

"Q. I see. Now, is there anything else that you are complaining about that was unlawfully seized and used against you? I think that is the nature of your case as far as I know.

"A. I believe in my original action I questioned the seizure of the gear puller in my car."

The Court propounded the following questions to appellant's attorney (Tr.P. 27):

"THE COURT: Let me ask you, does this case all hinge on this matter of a search warrant?

"MR. CAMPANA: Yes, your Honor.

"THE COURT: If that is all there is to it, Mr. Teeter categorically says there is a search warrant. If you are satisfied there is a search warrant is that the end of the case?

"MR. CAMPANA: If your Honor is satisfied there was a search warrant and properly served, absolutely."

The testimony of Sgt. Wigfield covering the application and issuance of the search warrant has previously been referred to and described. The search warrant, the affidavit and all papers pertaining to the same were then exhibited and placed in evidence. After the exhibiting and identification of the affidavit and search warrant the petitioner's attorney made the following statement (Tr. P.42):

"MR. CAMPANA: I must confess that this comes to me as a surprise today. The American Civil Liberties Union took this case because there wasn't a search warrant.

"THE COURT: (Tr.P.43). * * * These officers are convincing witnesses, and they have indicated all that took place, and that this warrant was read to this woman. She read it herself. Under those circumstances this man wasn't taken by surprise. He knew all along there was a warrant there."

Mr. Teeter stated (Tr.P.45): "Attorney Krehkenbaum was offered (search warrant) if he would like a photocopy, and he never came back and wanted it."

On August 13, 1962, after a complete hearing, Judge Follmer denied the peti-

tion for Writ of Habeas Corpus indicating that the petitioner has utterly failed to meet the burden of proving that his conviction was secured by unlawful search and without warrant. His contention to that effect was completely negatived by testimony of the officers and the introducing into evidence of the warrant and the underlying application therefor.

The appellant now appeals to this Court from the aforementioned findings and avers that Judge Follmer was in error in accepting as valid an alleged affidavit and search warrant charging an unknown person with receiving stolen goods for the purpose of establishing probable cause; not revealing the source of the information or the nature of the evidence in order to give probable cause; not bearing a seal on either affidavit or warrant; not particularly describing one of the actual items to be seized; and shown in effect to be lacking in probable cause at a judicial hearing the day following the search.

█ It is apparent from the foregoing that the appellant in his previous applications contended the nonexistence of any search warrant. Now that a search warrant was found to be in existence his contention is that the same is not proper because the application for the search warrant refers to a "Mrs. Carrie Weller." The affidavit, while it does use the name "Carrie Weller" does indicate her as being the wife of G. Roy Weller, 30 Fairground Avenue, Hagerstown, Maryland. It further stated that she resided with her husband at the aforementioned address. The building was then described in detail and the articles to be seized were described in detail. The affidavit at no time charged Mrs. Weller with stealing any of the articles mentioned therein, but specifically with receiving and having in her possession at said time the camera and the light meter. The police knew full well that the appellant was incarcerated. The affidavit also refers to Mrs. Weller as Mrs.

Garnett Roy Weller, therefore, any supposed error in referring to her as "Carrie Weller", when indeed her name was Pauline, was harmless and certainly cured by the precise description given.

The appellant admits that the light meter was properly described, but contends that since the camera was only referred to by its general name, model and size, this constitutes an insufficient identification. What better description could have been given?

█ Grounds for the issuance of a search warrant provide such warrant be issued: (1) to authorize search for stolen or embezzled property; (2) where probable cause appears; (3) from an affidavit made before a Magistrate or U. S. Commissioner; and (4) with the belief that at described premises the specifically identified property can be found. The requirement is that before a citizen's privacy can be invaded sufficient or probable cause must exist to believe that the search will be fruitful. Probable cause must be determined by a Magistrate or U. S. Commissioner before the search is undertaken. This is basic to the entire conception of the search warrant. The police officers in the instant case set forth the reasons for the issuance of the search warrant and presented those reasons in affidavit form to the Magistrate, a lawyer, who himself made the determination and outlined the specific area and the objects of the search.[1]

The affidavit in part charged that the appellant was a known habitual burglar; that Mrs. Weller, his wife, had complete knowledge of the appellant's criminal activities and she had on occasions received the fruits of his burglary; that a complaint and warrant had been issued on April 30, 1959 charging him with the Gettysburg burglary and that a detainer had been filed in the Bedford County Prison, Bedford County, Pennsylvania.

█ A showing of probable cause may not rest merely on unsupported belief or opinion. The underlying facts set forth in the affidavit must be sufficient to war-

---

I. See appendix.

rant a prudent man in believing that the offense was committed. Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959).

■■ We are further aware that an affidavit does not establish probable cause if it merely states the affiant's belief that there is a cause to search without stating facts upon which such belief is based. Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933). And while it is contended that the information contained in the affidavit was given to Sgt. Wigfield by the Pennsylvania State Police, it was held in Jones v. United States, 362 U.S. 257, 269, 80 S. Ct. 725, 735, 4 L.Ed.2d 697 (1959), "The question here is whether an affidavit which sets out personal observations relating to the existence of cause to search is to be deemed insufficient by virtue of the fact that it sets out not the affiant's observations but those of another. An affidavit is not to be deemed insufficient on that score, so long as a substantial basis for crediting the hearsay is presented." Here it is the opinion of the Court that the affidavit upon which the search warrant was issued fully complied with all legal requirements. The officers produced before the issuing Magistrate sufficient probable cause to believe that the property subject to search and seizure was being kept at the specific place mentioned in the warrant. The warrant particularly described the camera and light meter and the particular camera and light meter were found on the described premises.

■ The appellant complains that the knob or gear puller should not have been received into evidence at his trial because it was removed from the car he had been using on the night of his Bedford arrest. Automobiles are protected from unreasonable search, although in view of the fact that they can be moved from one place to another so quickly we must give reasonable interpretation as to when a search is authorized without the procurement of a search warrant.

■ The appellant's arrest in Bedford was made in the early hours of the morning. He was apprehended while in the act of attempting to burglarize a building. He denied he had a car, which was untrue, and he was found in possession of burglar tools and a revolver, charges to which he later pleaded guilty. The search of the car was incidental to the appellant's arrest and therefore proper.

Another contention of the appellant is that the search warrant and affidavit did not bear an official seal. (This is the first time this question has been raised). At the hearing before Judge Follmer the original documents were admitted in evidence but photocopies were received by the appellant's counsel and filed with the Court. Counsel for appellee states in his brief that the original papers did bear a seal and that it was specifically pointed out that the seal impression did not show on the photocopies. We are sure if any defect appeared on the originals Judge Follmer would have been aware of it. This contention is dismissed without further comment.

While not ruling whether the theory advanced in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) has retroactive application to this case, we are of the opinion that even applying that doctrine the appellant could be afforded no relief under the circumstances of the instant case.

Pursuant to the above findings the order of the District Court denying the petition for Writ of Habeas Corpus will be affirmed.

## APPENDIX.

### APPLICATION FOR SEARCH WARRANT

By Detective Sergeant Grayson Wigfield,
Hagerstown Police Department,
Washington County, Maryland.

This affiant hereby makes application to William Dwyer, Justice Of The Peace designated trial Magistrate For Washington County, for a search and seizure Warrant on the grounds that there is probable cause to belief that a felony has.

been committed in that the law prohibiting receiving stolen goods has been and is being violated in the City of Hagerstown, Washington County, Maryland by a person known as Mrs. Carrie Weller. The name of the affiant is Grayson Wigfield and said affiant is an officer in the Hagerstown Police Department.

In support of said application for search and seizure warrant, affiant deposes and says; That he has personal knowledge that one Garnett Roy Weller, 30 Fairground Avenue in Hagerstown, Maryland is a known and habitual Burglar and is the husband of one Mrs. Carrie Weller.

Further that Mrs. Carrie Weller lives and resides with her husband Garnett Roy Weller and has full and complete knowledge of his criminal activities.

Further that said Mrs. Carrie Weller has on occasions received the fruits of burglaries committed by her husband, Garnett Roy Weller. And that on or about the 25th day of June 1958 she did receive from her husband, Garnett Roy Weller a Zeiss-Ikon make Contax #2, 35 MM Camera which measurements were 3 inches high, 1½ inches wide and 5½ inches long, and a Weston Light Meter, Model 735, Serial number 6264416, said articles being the fruits of a burglary committed at the Gettysburg Furniture Company, Gettysburg, Pennsylvania and it is believed that Mrs. Carrie Weller did have and now possesses in her residence said Camera and Light Meter.

Further that Mrs. Carrie Weller resides at 30 Fairground Avenue in Hagerstown, Maryland. Said building being a dwelling house located on the north side of Fairground Avenue and is described as follows; Said house is red brick construction and is located in row of houses. And is a three story building with a full cellar. The windows are trimmed with white paint. This house has an individual front porch which extends but is adjoined to the front of this building. This building is known and bears the number 30 Fairground Avenue.

This property is leased by Mr. and Mrs. Garnett Roy Weller and is now occupied by Mrs. Carrie Weller and her children.

Further that said affiant has evidence and reasonable cause to believe that said stolen articles herein described are on the property occupied and described in this affidavit and that such articles are the fruits of burglary committed on June 25th, 1958 in the borough of Gettysburg, Adams County, Pennsylvania and were transported to Hagerstown, Maryland by Garnett Roy Weller and given to Mrs. Carrie Weller on or about June 25th, 1958.

Further that Garnett Roy Weller has been arrested by the Pennsylvania State Police, Gettysburg, Pennsylvania for the burglary of the Gettysburg Furniture Company on June 25th, 1958, and that a warrant has been issued and is being used as a detainer at the Bedford County Prison, Bedford County, Pennsylvania where said Garnett Roy Weller is now incarcerated awaiting trial for Burglary in Bedford, Pennsylvania.

Your affiant therefore prays that a search and seizure warrant be issued authorizing him, with the necessary and proper assistance, to search the dwelling house herein described and all contraband found be seized that pertains to said criminal activity.

Subscribed to this 9th day of May 1959.

GRAYSON L. WIGFIELD
Detective Sergeant of the Hagerstown Police Department.

Subscribed and sworn to before me this 9th day of May, 1959.

WILLIAM J. DWYER (Seal)
Justice Of The Peace designated Trial Magistrate.

SEARCH WARRANT

STATE OF MARYLAND, WASHINGTON COUNTY, to wit:

To: Hagerstown Police Department....

WHEREAS, application and complaint on oath and in writing, supported by affidavits, has this day been made before me,

the Subscriber .................... a Justice of the Peace for Washington County, Maryland, by Detective Sgt. Grayson Wigfield ................... alleging that he has reason to believe and does believe that in and upon certain premises, within said County, to wit, the premises known as 30 Fairground Ave., Hagerstown, Maryland and more particularly described as follows:

Said house is red brick construction and is located in row of houses. And is a three story building with a full cellar.

there is now being committed the crime of receiving stolen goods * * * contrary to the provisions of Section #467 of Article #27 of the Annotated Code of Maryland, and there is now located and concealed therein and thereon certain property, to wit: A Zeiss-Ikon make Contax #2, 35 MM Camera which measurements were 3 inches high, 1½ wide and 5¼ inches long, and a Weston Light Meter, Model 735, Serial Number 6264416. Said articles being the fruits of burglary committed at the Gettysburg Furniture Company, Gettysburg, Pennsylvania.

used as the means of committing a violation of a law or laws of the State of Maryland, to wit, Section #467 of Article #27 of the Annotated Code of Maryland, and

WHEREAS, the particular grounds for probable cause for the issuance of this Search Warrant consists of facts furnished by Detective Sgt. Grayson Wigfield

who personally appeared before me, the undersigned Justice of the Peace and testified under oath and made affidavit as follows:

AFFIDAVIT ATTACHED

and charging a violation of Section #467 of Article #27 of said Annotated Code of Maryland, and

WHEREAS, this cause coming on for hearing on the application for a Search Warrant supported by affidavits as herein stated, and being satisfied by the existence of the grounds of said application and that there is probable cause to believe their existence.

Now, THEREFORE, pursuant to the provisions of Section 259A of Article 27 of the Annotated Code of Maryland, you are hereby authorized and commanded to forthwith enter said premises during the day time with the necessary and proper assistance and search the same for all such property hereinabove specified, to seize and to take the same into your possession, if found; to bring the said property before me, and to report and act concerning the same as required of you by law.

Witness my hand and seal this 9th day of May, A.D., 1959.

(Signed) WILLIAM J. DWYER (Seal)
JUSTICE OF THE PEACE.

RETURN OF SEARCH WARRANT

Returned this 12th day of May, A.D., 1959.

Warrant served 5/11/59 at 5:00 P.M., by making search as within directed with the assistance of the following persons; Det's Frush, Hamberger, Lowry, Trooper (Hagerstown Police Officers) & Mackey and Patrolman Armstrong, who are Penna. Police Officers.

Upon such search I found and duly inventoried the seized property as follows: 1 Weston Light Meter, Model 735, Serial Number 6264414.

1 Zeiss-Ikon Make Contex #2 35 MM Camera. Serial Number G7164.

I, Detective Sgt. Grayson Wigfield the officer by whom this warrant was executed, do swear that the above inventory contains a true and detailed account of the property taken by me on the warrant.

Detective Sgt. Grayson Wigfield.

Sworn to and subscribed before me this 12th day of May, 1959.

W. J. DWYER
Justice of the Peace.