[Crim. No. 9299.   Second Dist., Div. Two.   July 1, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. EUGENE DALE GREEN, Defendant and Appellant.

Robert A. Doyle, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and George J. Roth, Deputy Attorney General, for Plaintiff and Respondent.

HERNDON, J.—By a jury verdict, defendants Eugene and Wesley Green were convicted of grand theft and of petty theft following prior felony convictions.[1] It was found that Wesley had suffered four prior felony convictions and Eugene had two. Both defendants took appeals from the judgments, but Wesley's was dismissed on his own motion. Hence the appeal now before us is only that of Eugene.

Our statement of facts will be related to the sole assignment of error, namely, that the court below committed reversible error in receiving in evidence the stolen property which the police officers had taken from Eugene's automobile an hour or so after he had been arrested. Sufficiency of the evidence is not, nor could it reasonably be, challenged.

The record discloses that Eugene and Wesley were caught in the act of stealing various items of merchandise from a Sears, Roebuck store in Pasadena. Their joint operation was a crude but potentially effective device which sometimes enabled one of them to engage the attention of a clerk while the other managed to conceal selected items of property on his person and thereafter make his unnoticed departure from the store.

Following appellant Eugene's arrest at approximately 8:20 p.m., he was asked by Mr. Skutley, a "Security Supervisor" employed by the store, whether he was driving an automobile. Appellant answered in the affirmative and told Mr. Skutley that he was driving a white 1956 Lincoln. Although he at once consented to a search of his car, appellant purposely misdirected Mr. Skutley to the vehicle of a

[1]Section 487 of the Penal Code defines grand theft, and section 667, as amended in 1963, provides: "Every person who, having been convicted of any felony either in this State or elsewhere, and having served a term therefor in any penal institution or having been imprisoned therein as a condition of probation for such offense, commits petty theft after such conviction, is punishable therefor by imprisonment in the county jail not exceeding one year or in the state prison not exceeding five years."

stranger. This vehicle is described as a Lincoln but the record does not reveal its color or whether or not it was of 1956 vintage. Apparently the fact that it was not appellant's vehicle was patently obvious, for appellant failed to ask Mr. Skutley any questions in connection therewith.[2]

Thereafter, at approximately 9 p.m., Eugene and Wesley were turned over to the Pasadena police. After these two suspects had been incarcerated, the police immediately resumed their search for Eugene's automobile. It was located at approximately 9:30 p.m. on a parking lot owned by the A & P Market. The two parking lots owned and operated by Sears, Roebuck and by the A & P Market were adjoining and, from a practical standpoint, one lot was no more than a paved continuation of the other.

Clearly observable through the windows of appellant's car were seven pairs of trousers lying on the back seat. These trousers still had their "raw cuffs," i.e., as with all "ready made" trousers, the bottoms of the trouser legs were of extra length ending in the jagged cuts made by pinking shears so that they might be altered to fit the customer and either turned outward for cuffs or inward for cuffless trousers. In addition, they still carried the price tags and the identifying tags of Hinshaw's Department Store, a neighboring place of business. It was obvious, of course, from the appearance of these items of merchandise that they had not been purchased because, in the course of the ordinary sale, tailoring of the trouser legs is completed and the tags are removed.

Also lying on the seat of this vehicle were seven shirts with similar identifying tags, and two "disc sanders" still in their Sears, Roebuck cartons approximately 2 feet in length and 8x8 inches in their other dimensions.[3]   Also there was

---

[2]Of course, since appellant did not raise any issue in the trial court regarding the propriety or manner in which his car or its contents were identified, and asked not a single question designed to develop any such issue, the record quite naturally is very limited in this regard. Appellant's one and only objection to the introduction of the evidence now challenged was made on "the basis that they were secured through an illegal search and seizure, they were not instigated through a lawful arrest or arrest taking place some time prior to this. The defendants were not present, had been transported by the police department. The officer, Mr. Skutley, has stated that the search was made by Pasadena police officers, that he was present at the time, that no warrant was, search warrant, was present at that time." Therefore, appellant quite properly has not made the *identification* of the car or its contents an issue on this appeal.

[3]It appears that these sanders also had been stolen from the Sears, Roebuck store that night, although it does not appear that this fact was known to the officers at the time they looked into appellant's car.

an electric mixer set complete with bowls and stand. This item had the appearance of "stolen fruit" because it was not contained in a box and it still carried on it the Sears, Roebuck price tag. Finally, there were a fishing line, several cartons of cigarettes, and some neckties.

Mr. Skutley testified that he did not see the registration slip on the car, but that before the officers impounded the car, he had seen various papers which were found in the glove compartment with the names of Eugene and Wesley Green thereon.[4] The doors to the car were unlocked, and, although the record is somewhat limited on the subject, it is not denied that all of these stolen items were clearly visible and identifiable from the outside.

The essence of appellant's contention is set forth in his brief as follows: "A search at a location distant from the place of arrest, after the arrest has been completed, and when entry of the place has not been made prior to or at time of arrest, but after, is illegal in absence of a search warrant."

The import of this contention is, to say the least, rather unclear. If appellant means to challenge the right of the officers to search *for* his car after his arrest, such contention clearly would be lacking in merit. In a metropolitan area the size of Los Angeles, it is most improbable that a team of department store thieves will transport their loot from urban or suburban areas on foot or by means of public transportation facilities.

When one suspect member of this acquisitive team tells the Sears, Roebuck investigator that he has driven to the store in an automobile described by him as a white, 1956 Lincoln,[5] surely both the investigator and the police authorities to whom the information is relayed would be sadly derelict in the performance of their duties if they did not attempt to locate this car as rapidly as possible. This would be an obviously necessary step in order to prevent its disappearance

---

[4]Originally, Wesley had stated that his name was Benjamin Holliday and Eugene had denied knowing him. However, it may be inferred that the officers knew Eugene's true name or had learned the names of both men by the time the car was discovered, for as heretofore noted no claim was made during trial, and none is made on this appeal, that the officers acted improperly in connection with their identification and impounding of the vehicle itself.

[5]It would seem that a white Lincoln of the vintage of 1956 would be relatively uncommon and fairly easy to find on an ordinary parking lot.

and the potential loss of any previously stolen property it might contain.

Speed of discovery is particularly important in instances such as the present where the officers knew from eye witnesses, and almost to a certainty, that the two men taken into custody were operating as a team and that very possibly one or more others might have been involved. When appellant lied about knowing Wesley, a fact established by the observed conduct of the pair prior to their arrest, and then deliberately misdirected the officers to an automobile that he did not own, it obviously was a very logical assumption that *his* automobile most probably contained something that appellant desired very much to conceal.

In these circumstances a police officer of any competence naturally would regard it as his plain duty to locate this vehicle as quickly as possible. Common sense would suggest the possibility, if not the probability, that there might be other collaborators or someone who might drive the vehicle away from the vicinity or remove from it whatever stolen goods or other incriminating evidence it might contain. The officers also might reasonably apprehend that appellant could use his allowed telephone call from the jail to suggest to some friend or collaborator that the vehicle or its contents be removed. (See Pen. Code, § 851.5.)

Similarly, if appellant is challenging the right of the officers to look into his car and observe the many large, plainly observable items with the sales tags still on them, the contention is equally unmeritorious. ''Apparently the . . . [adjoining parking lot] was a common area; the officers did not commit a trespass by entering it. Nor did the officers conduct an unreasonable search by looking in the window of the car. [Citation.]'' *(People* v. *Terry,* 61 Cal.2d 137, 152 [37 Cal.Rptr. 605, 390 P.2d 381].)

As the court pointed out in *Bielicki* v. *Superior Court,* 57 Cal.2d 602, 605 [21 Cal.Rptr. 552, 371 P.2d 288], the term ''search'' as used in the pertinent provisions of the United States and California Constitutions imports a definite concept: ''A search implies a prying into hidden places for that which is concealed and that the object searched for has been hidden or intentionally put out of the way. [Citation.]'' The opinion in *People* v. *West,* 144 Cal.App.2d 214, 219-220 [300 P.2d 729], quoted by the Supreme Court in *Bielicki, supra,* further states: ''While it has been said that ordinarily searching is a function of sight, it is generally held that the

mere looking at that which is open to view is not a 'search'.'' (See also *People* v. *Spicer,* 163 Cal.App.2d 678, 683 [329 P.2d 917], and cases cited therein.)

Further, even if it were to be conceded that it would be semantically more accurate to describe as a ''search'' the process of ''looking into'' a car which itself had been the object of a search, in the instant case the officers' ''searching look'' at the accumulated booty openly displayed in appellant's car would not have constituted an ''unreasonable search.'' ( *People* v. *Terry, supra,* 61 Cal.2d at p. 152.)

Finally, it may be that appellant's contention is meant to suggest that the further examination and removal of the merchandise found in his car was automatically unreasonable since his car was not under his ''immediate control'' at the time of his arrest or that its ''search'' was ''remote in time or place from the arrest.'' (*People* v. *Burke,* 61 Cal.2d 575, 580 [39 Cal.Rptr. 531, 394 P.2d 67] ; *Preston* v. *United States,* 376 U.S. 364, 367 [84 S.Ct. 881, 11 L.Ed.2d 777].) It is apparent, however, that the factual situations present in *Burke* and *Preston* are so wholly dissimilar to the instant case that the rules therein enunciated have no possible application here.

In both *Burke* and *Preston* the identification and removal into police custody of the automobiles there in question were coincident with the arrest of their owners and occupants. The searches, i.e., the prying into hidden recesses of the cars, condemned in those cases, occurred after both the cars and the occupants had been removed from the scene of the arrest. Further, in both instances the searches were of a general exploratory nature since in *Preston* the accused persons were arrested for ''vagrancy,'' and as the result of their ''unsatisfactory explanations and [their] suspicious actions'' in *Burke.*

In fact, as noted in *Preston,* page 368, it was necessary to make the questionable assumption ''that there are articles which can be the 'fruits' or 'implements' of the crime of vagrancy,'' before even the possibility of a legal search could have been present therein. Indeed, in *Burke,* despite the fact that the accused therein were arrested only by reason of their ''suspicious' actions'' in a neighborhood where recent burglaries had been committed, nevertheless the court held, page 580: ''The search made of *the interior of defendant's car at the time and place of the arrest was lawful* as a search incidental to arrest. . . .'' (Italics added.)

That the rule set forth in *People* v. *Terry, supra,* 61 Cal.2d at p. 152, was not affected by the *Burke* decision is expressly so stated therein, page 580: "The case of *People* v. *Terry, supra, ante,* pp. 137, 152-153, decided only a few days before *Preston,* is distinguishable on its facts. There the defendant fled when the police sought to talk to him after having observed in his automobile an object which appeared to be a marijuana cigarette, and there was a danger, not present here, that if the articles seen in the automobile were not taken into custody the defendant would return and remove the evidence."

As previously indicated, a similar situation existed in the instant case. After having described the car he had driven to the store where he and at least one other member of a team had been caught in the very act of stealing merchandise, appellant deceitfully took the investigator to a car that was not his own. For present purposes we may assume that this conduct vitiated the consent to search the car which he previously had expressed. (*Castaneda* v. *Superior Court,* 59 Cal.2d 439, 443 [30 Cal.Rptr. 1, 380 P.2d 641].) In turn, however, it served to increase and emphasize the imperative need for prompt police action to locate his car and take possession of any evidence or other items of stolen property contained therein.

Certainly the mere absence of appellant from the scene should not render illegal the observations made into the interior of the car or the removal of what rather clearly appeared to be stolen property plainly visible therein. Such a rule would require the officers to physically transport an arrested criminal with them while searching for his car. We see no possible purpose to be served by imposing any such potentially dangerous and useless requirement upon police operating in the field.

In the instant case, Wesley Green had assaulted the officers when they attempted to arrest him. Appellant Eugene Green had lied to the officers regarding the location of his car. Surely our constitutional provisions do not require that the incarceration of such persons must be dealyed until all evidence at the scene of their crimes has been brought to light. As stated in *People* v. *Robinson,* 62 Cal.2d 889 at page 895 [44 Cal.Rptr. 762, 402 P.2d 834]:

"In the case before us, the police conducted their search at the place of arrest, i.e., in front of the police station, at a time virtually contemporaneous to that of arrest. Viewing the

matter realistically, we conclude that the officers, in taking defendant a few steps away to the interior of the police station, acted as reasonably as if they had ordered him to stand in front of his car while they conducted their search. Since the latter course would clearly be incidental to an arrest, the procedure actually employed must as its equivalent be accorded the same legal effect. [Citation.]''

■ Likewise, in the case at bench the police conducted their search at the place of arrest, i.e., Wesley was arrested in the parking area outside the Sears store prior to appellant's arrest, and the search was essentially contemporaneous in time. Appellant and his partner were delivered to the Pasadena police officers at the security office of the Sears store at 9 p.m., and, following whatever period of time was required for this transfer, Mr. Skutley and the police immediately resumed the search and located appellant's car at approximately 9:30 p.m.

We can but conclude that the officers' observations into appellant's car and their removal of the stolen property plainly to be seen in the unlocked interior thereof were not too remote in time to be considered lawful, even if we were to assume that such actions would be permissible only by reason of their being incidental to his arrest. Even if the police had obtained a search warrant in this instance, we know of no rule that would require appellant's presence while the warrant was being executed.

■ It seems equally certain that the mere fact that the car was not under appellant's "immediate control" at the time of his arrest does not render the officers' conduct illegal. That the strict rule applied to a citizen's residence in *People* v. *Cruz*, 61 Cal.2d 861, 865-866 [40 Cal.Rptr. 841, 395 P.2d 889], has not been extended to vehicles is made clear by the recent decision in *People* v. *Harris*, 62 Cal.2d 681 [43 Cal. Rptr. 833, 401 P.2d 225]. There one Billy Harris had been arrested inside an apartment building where he had made a delivery of narcotics. The court, in reference to the automobile parked outside the building, stated without qualification, page 683: *"Incident to their arrest* of defendant Billy Harris, the officers *were entitled to search the car he* had *used to deliver* the heroin.'' (Italics added.)

By parity of reasoning, it likewise can be said in the present case that the officers were entitled to search the car which appellant admittedly had driven to the Sears, Roebuck

store and which presumably he would have used to remove the stolen property from its vicinity.

Further support for the proposition that a nearby vehicle may be searched at the scene of an arrest is found in numerous cases, both federal and state. In *Crawford* v. *Bannan,* 336 F.2d 505, defendant was arrested near his car, taken to the police station, after which the police returned and searched his car. The court distinguished *Preston* and held the search to be incident to the arrest. As to whether or not the police should have gotten a warrant, the court stated at page 507: "*Preston* did not overrule, but cited as existing authority, the case of *United States* v. *Rabinowitz,* 339 U.S. 56, 70 [70 S.Ct. 430, 94 L.Ed. 653] . . . which we believe confirms the legality of the search here discussed. In Rabinowitz, the Supreme Court stated 'Assuming that the officers had time to procure a search warrant, were they bound to do so? We think not, . . .' "

In *Caldwell* v. *United States,* 338 F.2d 385, the defendant robbed a bank at approximately 10:30 a.m. and then proceeded to escape in a getaway car. Approximately a half hour later the police found a car in the neighborhood which fit the description of the car. It was searched and some three hours later the police arrested the defendant at his home. The court stressed the difference between vehicles and homes, stated there was probable cause to search this particular car, and distinguished *Preston* on the basis that the car was not in custody and there was an opportunity for defendant to return and remove the evidence.

In *Weller* v. *Russell,* 321 F.2d 848, defendant was caught in the act of burglarizing a building. He stated that he owned no car and that he had hitchhiked to the building. He was taken to the police station where a search of his person revealed car keys with a miniature Maryland license plate sticker attached hereto. The police returned to the area and found a car bearing Maryland plates and which the keys fit. A search of the car, approximately an hour after the arrest, revealed incriminating evidence against the defendant. The search was held incident to the arrest and not unreasonable under the circumstances. For other federal cases sanctioning searches of automobiles in situations closely analogous to the instant case, see *Hollins* v. *United States,* 338 F.2d 227; *United States* v. *Fortier,* 207 F.Supp. 516; *Sisk* v. *Lane,* 219 F.Supp. 507, and the cases cited therein.

In *People* v. *Demes,* 220 Cal.App.2d 423 [33 Cal.Rptr.

986], defendant committed a robbery at about 1:30 a.m. He escaped in what was described as a blue-and-white 1954-1956 Pontiac. The car had been fired upon in the escape. An hour later a police officer at some distance from the robbery observed an unoccupied blue-and-white Pontiac with what appeared to be a bullet crease over the rear window. The car was searched and an hour later when the defendant appeared he was arrested. The court held that the Constitution does not prohibit a reasonable search of an automobile when there is reasonable cause to believe that it contains contraband *or stolen property,* citing *Scher* v. *United States,* 305 U.S. 251 [59 S.Ct. 174, 83 L.Ed. 151]. Appellant's petition for a hearing by the Supreme Court was denied.

Further authority supporting the legality of searches of nearby automobiles reasonably related to an arrest is found in *People* v. *Moulton,* 210 Cal.App.2d 673 [27 Cal.Rptr. 132]; *People* v. *Burke,* 208 Cal.App.2d 149 [24 Cal.Rptr. 912] (hearing by Supreme Court denied); and *People* v. *Daily,* 157 Cal.App.2d 649 [321 P.2d 469].

*People* v. *Koelzer,* 222 Cal.App.2d 20, 27-28 [34 Cal.Rptr. 718] (hearing denied), is a case which in many respects is quite closely parallel to the instant case, although factually it is much weaker. This decision contains a most appropriate expression of the unreasonableness of all appellant's vague contentions herein. In *Koelzer,* the events in question *preceded* the defendants' arrest rather than immediately following it as in our present case. Too, the defendants there were *merely suspected* of having committed a crime, i.e., burglary, rather than having been caught in the very act as was appellant herein. The defendants therein were still present at the scene, but had not yet been arrested for the burglary itself. They denied ownership of the car in question, falsified as to the type of car they did own, and denied that they had driven to the scene in any car. Nevertheless, Justice Pierce aptly observed:

"Our zeal to fend off encroachments upon the right of privacy must be tempered by remembrance that ours is a government of laws to preserve which we require law enforcement officers—live ones. Without becoming a police state, we may still protect the policeman's status. . . .

"The circumstances above related would themselves have justified the subsequent search of the motor vehicle. But when that search was made the officers had much more: They

had found the Volkswagen, the existence of which had been falsely denied; they had found it one-half block from the scene of the assumed burglary; they had ascertained the car belonged to Harry; and they had found Donald's wallet and further equipment, usable by burglars, including a kit of tools, *all in plain sight*. This did not constitute a search. [Citations.]

"We will not assert that at this point the officers were required to say to defendants: 'Now you boys wait right here while we go find a magistrate and get a search warrant which will permit us to lift the tarp and find what is beneath it.' Such quixotisms of police procedure befit a Gilbert and Sullivan operetta libretto, not the serious business of real-life police investigation."

Of course, it should be stressed that we are not here confronted with any question concerning the right of the police indiscriminately to open or to conduct a true "search" of the interiors of vehicles found adjacent to a store where a recent theft has been committed merely because they believe that the thief *might* have arrived in one of them or that previously stolen goods *might* be found concealed therein. Ordinarily such general explorations probably would be quite improper and illegal.

In the instant case, however, the officers knew from appellant's own statements that he had arrived at the scene in a particularly described car and one that was of a relatively rare variety. After he apparently had changed his mind and had withdrawn his expressed consent to the search of his described vehicle, it was entirely reasonable and proper for the officers to place him in jail for safekeeping and thereafter promptly to locate his car. When, upon its discovery, they could plainly observe in open view a plethora of articles whose stolen character was patent, they did not act unreasonably in confirming appellant's ownership of the car and in impounding it. (Veh. Code, § 22651, subd. (h).) The stolen articles thus observed in, and removed from, appellant's unlocked car were properly received in evidence.

The judgment is affirmed.

Fleming, J., concurred.

ROTH, P. J.—I dissent.

On the evening of November 8, 1962, eight items of men's clothing, valued in excess of $200, were taken from Hin-

shaw's Department Store in Arcadia. The same evening, appellant Eugene Green and an accomplice, Wesley Green (who does not appeal), were arrested in Sears by security guards who observed them stealing items of merchandise, including a transistor radio, a pair of pliers, two electric sanders and several ties. At the time of the arrest, none of the officers involved herein knew anything about the theft from Hinshaw's nor had any such theft been reported.

Robert Skutley, the Sears security officer, testified that subsequent to the arrest of appellant and Wesley Green, he asked appellant if he had driven to Sears in an automobile. Appellant replied that he had arrived in a white, 1956 Lincoln which was parked in the front parking lot. "I asked him if he had any objections if we looked through the car. He said he did not." Skutley said that when at approximately 8:20 p.m. he arrested appellant and took him to the east parking lot to find the Lincoln pointed out by appellant, it proved upon examination, that appellant had deliberately pointed out a car which did not belong to him. Appellant was then turned over to the Pasadena police and was lodged in the Pasadena police station at approximately 9 p.m. The search for appellant's car was then continued without appellant and without a search warrant. The Lincoln on the Sears lot to which Skutley was originally misdirected was gone. A white Lincoln was found by Skutley and two Pasadena police officers in an A & P market parking lot, separated by a driveway from the Sears north parking lot, at approximately ". . . Oh, 9:40, 9:30, right around there." Some merchandise was observable through the car window. Skutley and the two police officers opened and searched the car and found several items of men's clothing taken from Hinshaw's and several items taken from Sears.

The only evidence disclosed by the record as to the visibility of any price tags on merchandise is that of Skutley who testified in respect of the mixer set "It did have one of our price tickets on it . . ." Whether Skutley or anyone else saw this price ticket before the doors of the car were opened and the search began, or afterward, does not appear. Of the three men who made the search, Skutley is the only one who testified. Neither of the two Pasadena officers who assisted in the search gave any evidence on the subject thereof. Reduced to narrative form, Skutley's testimony was substantially as follows: I saw the garments and the papers in the glove

compartment the first time I saw the automobile. The papers consisted of a time payment plan book for Eugene Green and there was also a letter addressed to Wesley Green. The Lincoln automobile was found in the A & P parking lot. I was actually engaged in searching the inside of the car, that is, we were standing outside the car and we were moving the things to the side to see what there was to see. All the merchandise was found in the back seat. The car was not locked. I did not search for any registration on the car. I saw a time payment book. I'm not sure on what institution. I think it was the Bank of America. The book was made out to Eugene Green and I found it in the glove compartment. As I remember, there was a letter in there addressed to Wesley Green. I think Wesley's name was on the envelope. The car was impounded intact. It was towed to the police lockup behind the police department. In the rear seat of this second Lincoln there were two sanders and the mixer set and other merchandise. There were ties, I don't know how many. There was a Kenmore mixer set. No wrapping on it. It did have one of our price tickets on it, though. A complete set of mixer stand and bowls. *It will be noted that the only price ticket referred to was one on the Kenmore mixer.*

The majority assume that appellant and his accomplice were part of a gang and assert that it was the duty of the police to locate and search appellant's automobile before the other members of the gang were alerted to make away with it. Nothing in the record supports that assumption.

The majority appear to take judicial notice of the fact that a 1956 white Lincoln is a relatively uncommon variety of automobile in spite of the fact that the ". . . vehicle of a stranger . . . ." to which appellant originally but deceitfully directed Skutley, was a 1956 white Lincoln in the Sears parking lot and in spite of the fact that there is no evidence to indicate that there were 10 or 100 cars on the Sears and A & P parking lots. However, irrespective of the assumption, the record does not disclose that any of the three men embarked upon the search, observed through the windows seven pairs of trousers lying on the back seat with "raw cuffs" or observed through the window price tags of Hinshaw's Department Store making it ". . . obvious . . . they had not been purchased . . . ." Nothing in the record suggests that before opening the Lincoln, any of the three men observed on the back seat or anywhere else ". . . 7 shirts

with similar identifying tags . . .'' or two "disc sanders . . . in their Sears, Roebuck cartons. . . . an electric mixer set complete with bowls and stand.'' Specifically, in respect of the papers found in the glove compartment, Skutley testified ''. . . but before [the car was] . . . impounded . . . he had seen various papers . . . in the glove compartment with the names Eugene and Wesley Green.''

The search was made at night and the record is completely barren of any evidence whether the car searched was under a light, near a light, or whether the three men searching the car, used flashlights to look into the car before they opened it.

Assuming *arguendo* that the officers look through the windows of the car before opening it, these observations according to the testimony in the record, revealed nothing but items of general merchandise. Appellant had already misdirected the police to one car. At the time they decided to search the white 1956 Lincoln, they did not know it was appellant's car. After the car was searched, it was identified as appellant's car. The items on the back seat were subsequently identified as those taken from Sears and Hinshaw's Department Store.

Manifestly, when an officer has probable cause to make a search without a warrant, or legal cause to be at a location where he observes contraband, he need not blind himself to what he sees. (*People* v. *Samuels,* 229 Cal.App.2d 351, 359 [40 Cal.Rptr. 290].) The law also draws a sharp distinction between the observation of contraband material and material which is not offensive in itself but merely evidentiary. (*People* v. *Roberts,* 47 Cal.2d 374, 379 [303 P.2d 721].)

The majority assert that ''. . . we are not here confronted with . . . the right of . . . police indiscriminately to open or to conduct a true 'search' of the interiors of vehicles found adjacent to a store where a recent theft has been committed . . . .'' This, to me is precisely the question. Whether other cars were searched before what proved to be appellant's car was found, does not appear. The record does not establish that a single pair of trousers with "raw cuffs" or that even one price tag was seen through the windows of the car. Appellant had already misdirected Skutley to one Lincoln, and there is no other evidence upon which the search for a white Lincoln could be justified. In fact, a logical conclusion could be that assuming appellant had a car—it was not a white Lincoln, 1956 or otherwise. It would be just as logical to assume that appellant's car was a black Cadillac.

Absent a search warrant, the burden was on the prosecution to prove the legality of the search. (*Badillo* v. *Superior Court*, 46 Cal.2d 269 [294 P.2d 23].) I do not believe that on the record in the case at bench that burden has been sustained.

A search without a warrant must be incident to an arrest if its legality is not to be questioned. In *People* v. *Cruz*, 61 Cal.2d 861, the court says at page 866 [40 Cal.Rptr. 841, 395 P.2d 889] : '' [A] search is not 'incidental to an arrest' unless it is limited to the premises where the arrest is made; is contemporaneous therewith; has a definite object; and is reasonable in scope''. However, in *People* v. *Burke*, 61 Cal.2d 575, 579-580 [39 Cal.Rptr. 531, 394 P.2d 67], the court says: ''With respect to automobiles the courts have pointed out that it is not always practicable to obtain a warrant for search of a vehicle which can quickly be moved out of the locality, and, therefore, in some instances a search without a warrant will be justified by probable cause to believe that an automobile contains articles which by law are subject to seizure.

''.  .   .   .   .   .   .   .   .   .   .   .   .   .

''It must be determined in each case whether the facts fall within any of the exceptions to the constitutional rule that a search warrant must be had before a search may be made. The right to make a contemporaneous search without a warrant upon lawful arrest extends to things under the accused's immediate control and, to an extent depending upon the circumstances, to the place where he is arrested.'' (Cf. *People* v. *Terry*, 61 Cal.2d 137, 152 [37 Cal.Rptr. 605, 390 P.2d 381].) As with the search of a home, however, the search following an arrest must not be too remote in time or place from the arrest. (*Preston* v. *United States*, 376 U.S. 364, 367 [84 S.Ct. 881, 11 L.Ed.2d 777].)

The search of the car in the case at bench was not incident to appellant's arrest. (*People* v. *Burke, supra*; *People* v. *Cruz, supra*.) At the time appellant was arrested, he was still in Sears and at that time the officers had no knowledge of a theft at Hinshaw's and did not know until after inquiry, whether or not appellant had arrived at the store in a car. (Cf. *People* v. *Harris*, 62 Cal.2d 681 [43 Cal.Rptr. 833, 401 P.2d 225].) Further, whether appellant arrived at Sears in a car or on foot was immaterial to the crime for which he was arrested, to wit: theft from Sears.

I agree with the majority that the officers were entitled to

search for a vehicle if they had reasonable cause to believe that appellant used a vehicle in furtherance of the crime. However, the issue in this case is whether the officers acted reasonably in searching the vehicle, or any intervening vehicle, upon which they ultimately focused their attention without a stronger link in the chain of probable cause than a car similar to one the discription of which was already suspect, and the observation of general items of merchandise not shown by the record to be identifiable as possibly stolen items until after the search. I do not consider these facts within any of the exceptions to the constitutional rule that a search warrant must be had before a search may be made.

Respondent urges that the search was made with appellant's consent. When consent is claimed by the prosecution, it has the burden of presenting facts to the court which will enable the court to determine whether consent was in fact given. (*People* v. *Gorg*, 45 Cal.2d 776, 782 [291 P.2d 469]; *Castaneda* v. *Superior Court*, 59 Cal.2d 439, 442 [30 Cal. Rptr. 1, 380 P.2d 641].)

At the time of the giving of the alleged consent appellant was under arrest. While not conclusive, this is "A circumstance of particular significance'" in determining whether appellant freely consented to the search. (*Castaneda* v. *Superior Court, supra,* 59 Cal.2d 439, 443; *People* v. *Shelton,* 60 Cal.2d 740, 745 [36 Cal.Rptr. 433, 388 P.2d 665].) The added fact that appellant mislead and misdirected the officers to the wrong car, in the wrong parking lot, and failed to correct the misdirection when his custody was transferred to the Pasadena police officers, is proof to the contrary. (*People* v. *Haven,* 59 Cal.2d 713, 720 [31 Cal.Rptr. 47, 381 P.2d 927]; *Castaneda* v. *Superior Court, supra,* p. 443.)

The evidence here clearly sustains a conviction on the first count and I would affirm. It is also clear that no conviction could have been had on the second count which involved the merchandise stolen from Hinshaw's without the introduction of evidence obtained as a result of an unlawful search. I would reverse the judgment on the second count.