[Crim. No. 1668. Fourth Dist. Mar. 16, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. RAYMOND EDWARD CLAPPER, Defendant and Appellant.

 

 █
 ▌

Herman A. Hauslein, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and George J. Roth, Deputy Attorney General, for Plaintiff and Respondent.

COUGHLIN, J.—The defendant, Clapper, and a codefendant McPherson, both were charged with robbery; both pleaded not guilty, and the issue raised was one of identification; and both were found guilty of robbery in the first degree. The defendant appeals, seeking a reversal of the judgment on the grounds (1) that the evidence is insufficient to identify him as one of two persons committing the subject robbery; (2) that illegally obtained admissions by him were introduced in evidence contrary to the rule in *People* v. *Dorado*, 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]; and (3) that an instruction by the trial court violated his constitutional right against self-incrimination.

On August 14, 1963, at about 10:20 p.m., two young men entered a "Speedee Mart" market in San Diego County and robbed the operator on duty at gunpoint. The victim identified one of them as McPherson, the man with the dark hair, who had the gun. She testified that the defendant, Clapper, looked "similar" and "resembled" the second man, who had "blond, curly hair, lighter at any rate than the other one," and was carrying a tire iron. A customer who had left the market and was about to get into her automobile shortly before the robbery occurred testified that two men came up from the side of the market; started toward her and hesitated; veered away; and disappeared. She identified them as the defendant Clapper and the codefendant McPherson. On cross-examination by counsel for the defendant she stated it

would be possible for her to be mistaken in her identification of the defendant; that she believed him to be one of the boys, but could not say that she was absolutely sure, and that he had light hair similar to the defendant's. A son of the victim testified that as he approached the market shortly after 10 p.m. he saw two boys running out of the store, one of them was dark haired and the other was light haired. It was established that the defendant Clapper had light, wavy hair.

On September 10, 1963, a police officer on routine patrol in the East San Diego area stopped a Pontiac automobile driven by the codefendant McPherson, with whom the defendant Clapper was riding, after the officer noticed the automobile slow down as it passed a liquor store on three occasions. While interrogating McPherson the officer observed and took from the front seat of the Pontiac a gun; placed it on top of his patrol car; and radioed "for cover, possible robbery suspects in custody." As the officer said "robbery," the defendant "gave a startled look"; turned; and ran. Subsequently the defendant was taken into custody by another patrolman in response to an all-units pickup radio message. While being transported to the city jail, the defendant told the patrolman, in reply to questions from the latter, that he had traded a painting of some sort for the "gun", and that "it was owned by himself and another party."

A tire iron was taken from under the front seat of the Pontiac during the time the car was impounded, following its being taken into custody by the police.

The defendant and codefendant testified that they had not met each other until after August 14th; and that subsequent to their meeting, but before being stopped on September 10th, they had taken a trip to Canada, together, in the Pontiac.

The attack upon the sufficiency of the evidence to identify the defendant is without merit. ■ Positive identification, free from doubt, is not required. Testimony that a defendant "resembled" a robber has been held sufficient. (*People* v. *Richardson,* 81 Cal.App.2d 866, 870 [185 P.2d 47].) ■ The identification by the victim that the defendant resembled, or looked similar to the robber, and the testimony by the customer that she believed him to be one of the men in the immediate vicinity on the night in question, was sufficiently positive. (*People* v. *Daniels,* 223 Cal.App.2d 441, 445 [35 Cal.Rptr. 890]; *People* v. *Wiest,* 205 Cal.App.2d 43, 45 [22 Cal.Rptr. 846]; *People* v. *Jackson,* 183 Cal.App.2d 562, 567 [6 Cal.Rptr. 884].) ■ Additional factors corroborating such identifica-

tion were supplied by testimony in which the victim, the customer, and the victim's son identified the man referred to by them as having blonde, or light, curly hair; by the defendant's flight when referred to as a robbery suspect; by his association with the codefendant McPherson; and by the presence of a gun in the car which was described as similar to that in possession of McPherson at the time of the offense.

▊ The statement of the defendant to the patrolman who had arrested him, made while on his way to the city jail, that "the gun" was owned by "himself and another party" was not illegally obtained under the rule announced in *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]. At the time in question the patrolman had no knowledge of the subject robbery. The interrogation, apparently, was prompted by information contained in the all-units pickup message that a gun had been removed from the car in which the defendant had been riding; sought only information concerning ownership of that gun; its purpose was not "to elicit a confession" (*Escobedo* v. *Illinois,* 378 U.S. 478, 492 [84 S.Ct. 1758, 12 L.Ed.2d 977]); it was not a "process of interrogations that lent itself to obtaining incriminating statements" (*People* v. *Dorado, supra,* 62 Cal.2d 338, 347, 353); and was not part of an investigation that had focused upon the defendant with respect to the subject robbery or any other offense.

▊ The defendant testified on his own behalf; denied participation in the robbery; denied knowing his codefendant at the time; and claimed that he was visiting a girl friend on the night in question. Objection is made to that part of an instruction by the court advising the jury that if a defendant testifies and fails to deny or explain evidence against him which he can reasonably be expected to deny or explain because of facts within his knowledge, the jury may take that failure into consideration as tending to indicate the truth of such evidence and as indicating that among the inferences that may reasonably be drawn therefrom those unfavorable to the defendant are more probable. He contends that giving the foregoing instruction was a violation of his constitutionally guaranteed right against self-incrimination. This right was waived when he became a witness. Giving the instruction under such circumstances has been approved. (*Caminetti* v. *United States,* 242 U.S. 470 [37 S.Ct. 192, 197-198, 61 L.Ed. 442]; *Johnson* v. *United States,* 318 U.S. 189, 195 [63 S.Ct. 549, 552-554, 87 L.Ed. 704, 710]; see also *People* v. *Modesto,* 62 Cal.2d 436 [42 Cal.Rptr. 417, 398 P.2d 753].)

██ The People ask this court to consider the effect, under the decision in *People* v. *Burke,* 61 Cal.2d 575 [39 Cal.Rptr. 531, 394 P.2d 67], of the admission into evidence of the tire iron which was recovered from under the seat of the Pontiac after the car had been impounded following McPherson's arrest. When the tire iron was offered in evidence the court asked counsel for both defendants if there was "Any objection", to which counsel for McPherson and for the defendant replied, respectively, "None," and "No objection." Under these circumstances any objection to the admission of the tire iron, and testimony relating to its discovery, was waived. (*In re Lessard,* 62 Cal.2d 497, 503 [42 Cal.Rptr. 583, 399 P.2d 39]; *Robinson* v. *Superior Court,* 49 Cal.2d 186, 187 [316 P.2d 1].)

The judgment is affirmed.

Brown (Gerald), Acting P. J., and Finley, J. pro tem.,* concurred.

_____

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.