**Gerald Glen BOYDEN, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 20215.**

United States Court of Appeals
Ninth Circuit.

July 20, 1966.

Joseph G. Schumb, Jr., San Jose, Cal., for appellant.

Manuel L. Real, U. S. Atty., John K. Van De Kamp, Asst. U. S. Atty., Chief, Crim. Div., J. Brin Schulman, Asst. U. S. Atty., Asst. Chief, Crim. Div., Warren P. Reese, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before BARNES, Circuit Judge, MADDEN, Judge of the United States Court of Claims, and ELY, Circuit Judge.

MADDEN, Judge.

This is an appeal from a conviction of robbery of a national bank and, in the commission of the robbery, assaulting and placing in jeopardy by use of a dangerous weapon a person's life, in violation of § 2113(a) and (d) of Title 18, United States Code.

On December 22, 1964, at approximately 11:20 a. m. the branch of the Bank of America located at 17th and Bristol Streets in Santa Ana, California, was robbed at gun point of $5762. The manager of the bank followed the robber to the front door of the bank, observed the color, make, model and license number of the automobile in which the robber departed, and caused that information to be written down. The police had been called by others. The manager gave the police the information about the automobile and described the robber as a heavy-set male Negro.

Officer Baker of the sheriff's staff heard the police radio broadcast of the above information. He was then driving in the vicinity of 17th Street and Broadway, so he proceeded on 17th Street toward the bank. Within a block of the bank he observed a car and driver answering the description of the police broadcast. Baker turned his car and followed the car which he had observed, and then saw that it had a license number

different from the one given in the broadcast. He nevertheless decided to stop the observed car, and sounded his siren. The observed car thereupon took off erratically and evasively and at high speed through heavy traffic. Baker's car stalled and another sheriff's car driven by Deputy Ferlauto took up the chase at a speed sometimes exceeding 100 miles per hour. The chase continued for some four miles to where 17th Street comes to a dead end at Newport Avenue. In turning left into Newport Avenue the pursued car turned over, landing on its roof in a field. As Deputy Ferlauto approached the wreck with drawn revolver, the appellant crawled out from the wreck. Officer Baker had in the meantime arrived, and he hand-cuffed the appellant.

Officer Allen of the Santa Ana Police Department had heard the first police broadcast and a further broadcast that the suspect's car had overturned. He went to the scene of the wreck and took custody of the prisoner, turning him over to another police officer with directions to take him to the police station, which was done. Allen then called for a tow truck to set the overturned car upright, and for a fire truck to prevent or extinguish a fire that might arise from the spillage and leakage of gasoline from the wrecked car.

A crowd of onlookers had gathered at the scene of the wreck. The tow car set the wrecked car upright. Officer Allen searched the interior of the car and then proceeded to search the trunk of the car, the cover of which, though jammed in the overturning, had been opened by two firemen and a highway patrolman. Allen found in the trunk, and seized, a brown paper bag containing $5722 in United States currency, a fully loaded pistol with one round in the chamber, a license plate bearing the number HSC 966, the number which the robber's license plate had borne when he drove away from the bank after the robbery, and a blue tanker jacket. A single $20 bill had been found inside the car or on the ground at the wreck. The amount of money taken from the bank by the robber was $5762, as previously recited.

The items found in the trunk of the wrecked car and seized by the sheriff were introduced in evidence, over the defendant's objection, at his trial. They had also been the subject of a motion, prior to trial, to suppress, which motion had been denied after a hearing.

■ We hold, as did the trial court, that the evidence was admissible; that its seizure was not in violation of the Fourth Amendment. We think that, in the circumstances, it would have been a serious dereliction of duty on the part of the police officer to have delayed the search of the automobile, including its trunk, until a search warrant could be obtained. The automobile had been upside down for the considerable time before the tow truck arrived. The ground and grass would have been saturated with leaked gasoline. There was a crowd of bystanders. The officer had good reason to believe that the money and the gun, which the robber had when he left the bank, were somewhere in the automobile. If the hot engine, after the 100-mile-per-hour chase, or a bystander's match or thrown-away cigarette had ignited the gasoline, evidence of the highest importance, because it would be necessary or at least useful in convicting an armed bank robber, might have been destroyed. Property of the bank, of the value of $5762, would or might have been destroyed.

The appellant relies heavily upon the Supreme Court's decision in Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777. As we read the opinion of the Court in Preston, it recognizes a right and duty on the part of an arresting officer to seize the fruits of the crime and the instruments of the crime as evidence, at the time of arrest, if his leaving them unseized would create a danger that they would be destroyed. Thus a single highway patrolman, making an arrest and hand-cuffing the prisoner and having reason to believe that stolen money or goods were in the trunk of the prisoner's car, would not be con-

stitutionally obligated to leave that car with its contents at the side of the road while he took the prisoner to a lock-up and sought a magistrate to obtain a warrant to open the trunk and seize the fruits and instruments of the crime.

■ We see no reason why a police officer would not have a similar right and duty in a case such as the instant one, in which the danger of loss of the evidence is the danger of its being consumed by fire. The police officer in charge had the responsibility for making an important decision. He probably could not have articulated his decision in the language of constitutional law. We think that his decision was reasonable in the circumstances. That is what the Constitution requires.

■ The appellant, on the day of the robbery, was taken before a United States commissioner for a preliminary hearing and was charged with the robbery hereinbefore adverted to. He requested the commissioner to appoint a lawyer to represent him. The commissioner replied that he had no authority to do that, but that he would postpone the hearing to enable the appellant to get a lawyer. The appellant said that that would be of no use since he had no money to hire a lawyer. The hearing then proceeded, a witness testified for the Government, the appellant made no statement, and the commissioner held him to answer in the district court. He was thereafter indicted, tried, convicted and sentenced. At his trial, and on this appeal, he has been represented by counsel.

The appellant assigns as reversible error the denial of his request for counsel at the preliminary hearing. In the circumstances, we find no reversible error in this occurrence. In Marcella v. United States, 9 Cir., 344 F.2d 876, this court dealt with substantially the same problem. The court discussed the pertinent precedents, and we will not repeat that discussion. The court said:

Beyond the setting of bail and compliance with Rule 5, Federal Rules of Criminal Procedure it does not appear

* * * that any further proceedings of any kind took place during that proceeding. There were no pleas, statements or waivers made by appellant.

We reaffirm what was said and decided in Marcella.

■ The appellant, who is a Negro, asserts as error the exclusion of Negroes from the group of potential jurors from which was selected the jury which tried him. There was no such exclusion. It just happened that there were no Negroes in the group. This contention has no merit. Nor does the appellant's final assignment of error, that the evidence was insufficient to support his conviction. There was abundant evidence of his guilt.

The judgment is affirmed.