[Crim. No. 10374.    In Bank.    Mar. 8, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. GEORGE L. WEBB, Defendant and Appellant.

Robert N. Beechinor, under appointment by the Supreme Court, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Albert W. Harris, Jr., Assistant Attorney General, Gloria F. DeHart, Jay S. Linderman, Edward P. O'Brien, John F. Kraetzer and John T. Murphy, Deputy Attorneys General, for Plaintiff and Respondent.

MOSK, J.—Defendant appeals from a judgment of conviction entered upon a jury verdict finding him guilty of unlawful possession of narcotics. (Health & Saf. Code, § 11500.)

Defendant's principal contention is that he was convicted on evidence unlawfully obtained in a search of his car after it had been towed from the scene of the arrest to a police parking lot, citing *Preston* v. *United States* (1964) 376 U.S. 364 [11 L.Ed.2d 777, 84 S.Ct. 881], and *People* v. *Burke* (1964) 61 Cal.2d 575 [39 Cal.Rptr. 531, 394 P.2d 67]. As will appear, we have concluded that those decisions are distinguishable on their facts and that the search here conducted was not "un-

reasonable'' within the meaning of the constitutional guarantees (U.S. Const., 4th and 14th Amends.; Cal. Const., art. I, § 19).

By an amended information defendant was charged in two counts with transportation of narcotics (Health & Saf. Code, § 11501) and possession of narcotics (Health & Saf. Code, § 11500), and three prior felony convictions were alleged. Defendant pleaded not guilty to both counts and admitted the priors. A jury found him not guilty on the transportation count but was unable to reach a verdict on the charge of possession. A mistrial was declared on the latter count. Upon retrial on the possession charge defendant was convicted, and he now appeals from that judgment.

Shortly after 10 p.m. on July 9, 1964, plainclothes officers Alves and Carreker of the narcotics detail of the Oakland Police Department were driving in their unmarked car in the vicinity of Seventh and Willow Streets in West Oakland, when they observed defendant seated behind the wheel of a parked automobile. The officers had been looking for him, having received information via police teletype that there was a warrant outstanding for his arrest. They pulled up beside his car, and Officer Alves, who was known to defendant as a policeman from prior contacts, called out, ''Hi, George.'' Defendant immediately pushed down the lock button on his car door. Officer Alves then got out of his vehicle and stepped over to defendant's car, displayed his badge and asked him to roll down the window because he wanted to talk to him. At first defendant refused to do so, but after the officer repeated his request defendant lowered the window some three and a half inches. Officer Alves then announced, ''I have a warrant for your arrest,'' and reached through the window for the purpose of unlocking the door. Defendant made a rapid downward motion with his right hand, started and accelerated the car violently, causing the wheels to spin. Officer Alves, whose arm was wedged in the window, cried out, ''Hold it! Hold it!'' but defendant pulled away from the curb.

Officer Carreker, who had meanwhile alighted from the police car, fired one shot into defendant's car and pulled his partner free. Officer Carreker then fired two more shots at the car, which traveled some 30 yards in a semicircular path and crashed into a parked vehicle on the other side of the street, partially blocking the oncoming traffic lane. Defendant jumped out and started to run, but stopped when told if he did not halt the officer would shoot. After defendant was ap-

prehended Officer Alves saw he was wounded and bleeding from the neck, and went to the radio unit to call an ambulance. Defendant was then placed in the back of the police car. While waiting a few minutes for the ambulance to come, Officer Alves opened the front door of defendant's car and saw a red balloon on the floor of the driver's side. As he retrieved the balloon, the ambulance arrived and defendant was transferred to it. Officer Alves showed the balloon to his partner, then accompanied defendant to the hospital.

Meanwhile, a large crowd of people had gathered and uniformed policemen were summoned to control them. Officer Carreker entered defendant's car through the open door and continued the search, looking into the glove compartment. He desisted, however, when his superior advised him "he thought it would be best that the car not be searched at the scene, that it would be towed along with a police officer accompanying in the tow, and we could search it at the parking lot." Accordingly, the car was towed some 20 blocks to a parking lot maintained by the police across the street from the police station, and a guard was posted over it.

About 15 minutes later Officer Alves returned from the hospital and went directly out to the parking lot. He reopened the door of defendant's car and found an orange balloon lying on the floor behind the driver's seat. On the convertible rail above the driver's door he found four more balloons and a small white paper bindle. Each of the balloons and the bindle contained heroin.

Defendant's principal contentions on appeal relate to the propriety of admitting these items into evidence in the light of the Fourth Amendment prohibition against unreasonable searches and seizures.[1]

It cannot be seriously contended that the red balloon found by Officer Alves on the floor of the front seat while waiting for the ambulance to arrive was the product of an illegal search and seizure. Although the officers had no search warrant, they had ample reasonable cause to arrest defendant

---

[1]The record is unclear as to whether defendant made a timely objection to the introduction of this evidence. In the absence of such an objection, of course, the point will be deemed waived. (*People* v. *Clapper* (1965) 233 Cal.App.2d 34, 38 [43 Cal.Rptr. 105].) Although defendant did not specifically object at the time the evidence was offered and admitted, his counsel had made a general objection on the ground of illegal search and seizure in a colloquy with the court at the commencement of trial. In view of the fundamental constitutional question involved and the relative simplicity of the facts, we shall consider that objection to be continuous and sufficient to bring the matter before us on the merits.

(Pen. Code, § 836, subd. 3) and hence were authorized to search his car as an incident to that arrest. (*People* v. *Robinson* (1965) 62 Cal.2d 889, 894 [44 Cal.Rptr. 762, 402 P.2d 834]; *People* v. *Burke* (1964) *supra*, 61 Cal.2d 575, 580.) Reasonable cause was established by the information received by the officers via police teletype that there was a warrant outstanding for defendant's arrest; even though they were not in possession of the warrant itself[2] they were entitled to make an arrest on the basis of this information as it was received from official sources. (*People* v. *Kraps* (1965) 238 Cal.App.2d 675, 679 [48 Cal.Rptr. 89]; *People* v. *Schellin* (1964) 227 Cal.App.2d 245, 251 [38 Cal.Rptr. 593]; *People* v. *Stewart* (1961) 189 Cal.App.2d 176, 178 [10 Cal.Rptr. 879].) In the present case, moreover, such reasonable cause was bolstered by defendant's furtive and suspicious conduct when first approached by Officer Alves, followed by his reckless attempt to flee at the risk of the officer's life and limb. (*People* v. *Cruz* (1964) 61 Cal.2d 861, 865 [40 Cal.Rptr. 841, 395 P.2d 889]; *People* v. *Martin* (1956) 46 Cal.2d 106, 108 [293 P.2d 52]; *People* v. *Vegazo* (1961) 191 Cal.App.2d 666, 668-671 [13 Cal.Rptr. 22]; *People* v. *Cisneros* (1958) 166 Cal.App.2d 100, 102 [332 P.2d 376]; *People* v. *Paul* (1957) 147 Cal.App.2d 609, 617 [305 P.2d 996].)

Defendant urges nevertheless that the arrest was merely a "pretext" for the search and hence that the latter was not reasonable within the meaning of the Constitution. (See *People* v. *Haven* (1963) 59 Cal.2d 713, 719-720 [31 Cal.-Rptr. 47, 381 P.2d 927], and cases cited.) In support, defendant points primarily to the fact that the policemen who arrested him were acting on the authority of a burglary warrant. The argument is without merit. There is no authority holding it unlawful for a police officer assigned to a narcotics detail to execute a warrant of arrest for an offense unrelated to narcotics. On the contrary, Penal Code section 816 declares that "A warrant of arrest must be directed generally to any peace officer in the State, and may be executed by any of those officers to whom it may be delivered."

A more difficult question is presented by defendant's challenge to the legality of the continuation of Officer Alves' search of his car after it had been towed to the police parking lot. Defendant relies on *Preston* v. *United States* (1964)

---

[2] Penal Code section 842 provides in part that "An arrest by a peace officer acting under a warrant is lawful even though the officer does not have the warrant in his possession at the time of the arrest. . . ."

*supra,* 376 U.S. 364, and *People* v. *Burke* (1964) *supra,* 61 Cal.2d 575. A meaningful resolution of the problem requires us to examine closely the facts of those cases and the scope of the rule they apply.

In *Preston* the police received a telephone complaint at 3 o'clock one morning that "three suspicious men acting suspiciously" had been seated in a car parked in a business district since 10 o'clock the previous evening. Police officers went to this location and found the defendant and two companions in the car. When asked why they were parked there, the men gave unsatisfactory and evasive answers; they also admitted they were unemployed and had only 25 cents between them. The officers then arrested them on a charge of vagrancy, searched their persons for weapons, and took them to police headquarters. Their car, which had not been searched at the time of arrest, was driven by an officer to the station and then towed to a garage. After the men had been booked, several officers went to the garage to search the car and found two loaded revolvers in the glove compartment. They gained access to the trunk after removing the back seat, and found caps, masks, rope, a dummy license plate, and other items. In a subsequent trial on a charge of conspiracy to rob a bank, these articles were admitted into evidence over timely objections.

In *Burke* a police officer observed the defendant and a companion early one morning acting suspiciously in an area where numerous burglaries had recently occurred. When asked why they were there, they gave evasive answers or remained silent. "Because of the unsatisfactory explanation and the suspicious actions of the two men," the officer arrested them. Another officer arrived shortly thereafter, and the defendant was placed in a police car. A pair of gloves was found on the front seat of the defendant's nearby car, but the officers were unable to open the trunk with the keys provided by the defendant. He was then taken to the police station and his car was towed to the police impound lot. Sometime before 3 p.m. that day, officers opened and searched the trunk of the defendant's car and found articles which had been taken in a burglary some two and a half hours before his arrest. In a prosecution for burglary, these articles were admitted into evidence over defendant's objection.

The decisions in both *Preston* and *Burke* proceeded from the established rule that "when a person is lawfully arrested, the police have the right, without a search warrant, to make

a contemporaneous search of the person of the accused for weapons or for the fruits of or implements used to commit the crime. *Weeks* v. *United States*, 232 U.S. 383, 392 [58 L.Ed. 652, 34 S.Ct. 341, L.R.A. 1916B 834] (1914); *Agnello* v. *United States*, 269 U.S. 20, 30, 70 L.Ed. 145, 46 S.Ct. 4, 51 A.L.R. 409] (1925). This right to search and seize without a search warrant extends to things under the accused's immediate control, *Carroll* v. *United States, supra,* 267 U.S., at 158 [69 L.Ed. 643, 45 S.Ct. 280, 39 A.L.R. 790], and, to an extent depending on the circumstances of the case, to the place where he is arrested, *Agnello* v. *United States, supra,* 269 U.S. at 30; *Marron* v. *United States,* 275 U.S. 192, 199 [72 L.Ed. 231, 48 S.Ct. 74] (1927); *United States* v. *Rabinowitz,* 339 U.S. 56, 61-62 [94 L.Ed. 653, 70 S.Ct. 430] (1950)." (376 U.S. at p. 367; see also 61 Cal.2d at pp. 579-580.) In each case the judgment was reversed on the ground that the search of the defendant's car at the police garage "was too remote in time or place to have been made as incidental to the arrest and . . . therefore, that the search of the car without a warrant failed to meet the test of reasonableness under the Fourth Amendment, rendering the evidence obtained as a result of the search inadmissible." (376 U.S. at p. 368; see also 61 Cal.2d at p. 580.)

Viewed thus in its proper perspective, *Preston* announced no radically new doctrine. The decision simply applied to a particular set of facts a rule which has been characterized by the Supreme Court as "a practice of ancient origin (*Harris* v. *United States* (1947) 331 U.S. 145, 150 [91 L.Ed. 1399, 67 S.Ct. 1098]). Our decision in *Burke,* to which we adhere, followed from *Preston,* inasmuch as the cases arose out of substantially similar fact situations.

But neither *Preston* nor *Burke* stands for the proposition that hereafter all searches without a warrant of a suspect's car other than at the immediate time and in the immediate vicinity of the arrest are *ipso facto* unreasonable within the meaning of the Constitution. ■ As the United States Supreme Court observed in *Cooper* v. *California* (1967) 386 U.S. 58, 59 [17 L.Ed.2d 730, 87 S.Ct. 788], "We made it clear in *Preston* that whether a search and seizure is unreasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case and pointed out, in particular, that searches of cars that are constantly movable may make the search of a car without a warrant a reasonable one although the result might be the

opposite in a search of a home, a store, or other fixed piece of property.'' We are bound to adopt a similar approach (see, e.g., *Bielicki* v. *Superior Court* (1962) 57 Cal.2d 602, 605 [21 Cal.Rptr. 552, 371 P.2d 288]), for the United States Supreme Court's ''long-established recognition that standards of reasonableness under the Fourth Amendment are not susceptible of Procrustean application is carried forward when that Amendment's proscriptions are enforced against the States through the Fourteenth Amendment.'' (*Ker* v. *California* (1963) 374 U.S. 23, 33 [10 L.Ed.2d 726, 83 S.Ct. 1623].)

We turn, then, to an analysis of a number of post-*Preston* federal and state cases which cast light on various aspects of the problem before us.

In *Crawford* v. *Bannan* (6th Cir. 1964) 336 F.2d 505, the Toledo police received a radio communication from another police department informing them that the defendant was wanted for armed robbery and that a warrant would be issued for his arrest; a description of the defendant and his car was also furnished. At 9 p.m. on the day in question two Toledo police officers sighted the described car in a parked position; they began surveillance, and at 10 p.m. the defendant arrived and went to his car. The officers arrested him, took his car keys, *and removed him from the scene* in a patrol wagon. After the defendant had been taken away the officers unlocked his car, searched it, and seized a revolver in the glove compartment and some clothes from the trunk. In a prosecution for armed robbery, these articles were introduced over the defendant's objection.

In affirming a denial of federal habeas corpus relief after conviction in a state court, the circuit court held (at p. 506) : ''The narrow question we consider is whether the fact that the search here was made *after* Crawford was taken away in the patrol wagon [fn. omitted] renders it illegal under Preston. We do not so read this latest Supreme Court exposition of the difficult subject of search and seizure. We are of the opinion that the search under attack here was valid, as *incidental to and contemporaneous with* the arrest of Crawford.'' (Italics in original.) The court emphasized the following language from *Preston* (376 U.S. at p. 367) : ''The rule allowing contemporaneous searches is justified, *for example,* by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime—things

which might easily happen where the weapon or evidence is on the accused's person or under his immediate control." (Italics added.) The circuit court then reasoned (at p. 507 of 336 F.2d), "Were these examples intended to exhaust the list of possible justifications, it would be easy to dispose of the present case. After Crawford had been taken away in the patrol wagon, he was no longer a danger to the officers, nor were the contents of his vehicle, in police custody, exposed to destruction or removal. As the District Judge found, 'the officers might have impounded the car until a search warrant was obtained.' Must, then, Preston be read as holding that any search without a warrant, *incident to and substantially contemporaneous with* an arrest, is illegal if at the time neither the arresting officers nor the evidence of the crime would be endangered by taking the steps necessary to obtain a search warrant? We do not believe that Preston commands such a holding.

"Preston did not overrule, but cited as existing authority, the case of *United States* v. *Rabinowitz,* 339 U.S. 56 [94 L.Ed. 653, 70 S.Ct. 430] (1950), which we believe confirms the legality of the search here discussed. In Rabinowitz the Supreme Court stated 'Assuming that the officers had time to procure a search warrant, were they bound to do so? We think not, because the search was otherwise reasonable . . . .' 339 U.S. 64 [94 L.Ed. 659, 70 S.Ct. 434]. In our view, the conduct of the Toledo officers in this case was 'otherwise reasonable.' . . . We believe that Rabinowitz controls our decision and sustains the validity of the search that was made of Crawford's vehicle. We so hold. We do not consider that the fact that Crawford had left the scene when his automobile was searched prevented such search from *being incidental to his arrest.*" (Italics in original.) The United States Supreme Court denied certiorari. (381 U.S. 955 [14 L.Ed.2d 727, 85 S.Ct. 1807].)

A further refinement of the doctrine of search incident to an arrest is illustrated in the recent case of *Boyden* v. *United States* (9th Cir. 1966) 363 F.2d 551. There the defendant fled in his car from a bank robbery, and police officers took up a high-speed chase. In attempting a right-angle turn the defendant's car rolled over, landing on its roof in a field. The defendant was arrested and removed from the scene in a police car. The remaining officer summoned a tow truck, which set the defendant's car upright. Gasoline from the wrecked car had leaked onto the ground, and a crowd had

gathered. The officer searched the car, and the jammed trunk lid was forced open. Inside the trunk the officer found the robbery loot and other incriminating articles. In a prosecution for bank robbery and assault, this evidence was introduced over the defendant's objection.

On appeal from the ensuing judgment of conviction the defendant relied heavily on *Preston*. The circuit court affirmed, however, holding that the officer had the right and duty to search the car even after the defendant had left the scene, in view of the risk of fire from the spilled gasoline, the hot engine, and the crowd of onlookers; for the purpose of preventing such a fire from destroying the evidence, the officer was not compelled to delay the search until a warrant could be obtained. (363 F.2d at pp. 553-554.) It is noteworthy that although a tow truck was actually at the scene, the court imposed no requirement that the car be towed to a police garage for a search with a warrant. Rather, the court concluded (*ibid.*), "The police officer in charge had the responsibility for making an important decision. . . . We think that his decision was *reasonable* in the circumstances. That is what the Constitution requires." (Italics added.)

The *Boyden* case arose in California, where similar decisions have been handed down by our state courts. Thus in *People* v. *Robinson* (1965) *supra,* 62 Cal.2d 891, police officers riding in their patrol car received radio information that two men in an automobile were drunk and had acted suspiciously in inquiring about a "hot sheet" on credit cards at a service station. The officers followed the other car for several blocks, observing that it was being driven in an erratic manner, then brought it to a halt in front of the police station. The two men in the car, the defendant and his companion, were taken inside the station for intoximeter tests and booking. While they were thus detained, an officer was sent outside to search the car. No search warrant had been obtained. Under the floor mat and the rear seat were discovered incriminating articles subsequently introduced against the defendant in a prosecution for forgery.

We affirmed the judgment of conviction, holding in the alternative that the search of the car was lawful because it was conducted at the place of the arrest and was virtually contemporaneous therewith. (62 Cal.2d at p. 895.) We distinguished *Preston* and *Burke* on their facts, and quoted from *Preston* to the effect that once the car in that case had been impounded "there was no danger that any of the men arrested

could have used any weapons in the car or could have destroyed any evidence of a crime'' (376 U.S. at p. 368). But once the defendant in *Robinson* was detained inside the police station for booking, it would likewise seem there was ''no danger'' he could have ''used any weapons in the car'' parked on the street or have ''destroyed any evidence'' therein. The true rationale of *Robinson,* therefore, must be found in the statement (62 Cal.2d at p. 895) that ''Viewing the matter realistically, we conclude that the officers, in taking defendant a few steps away into the interior of the police station, acted as *reasonably* as if they had ordered him to stand in front of his car while they conducted their search.'' (Italics added.) Again, the controlling question was whether the search was reasonable under all the circumstances. (Accord, *People* v. *Green* (1965) 235 Cal.App.2d 506, 511-513 [45 Cal.Rptr. 371]; *State* v. *Collins* (1964) 270 Minn. 581 [132 N.W.2d 802, 805].)

█ The foregoing decisions teach us that the classic justifications for the doctrine of search incident to an arrest, i.e., the need to discover hidden weapons and the need to prevent the destruction of evidence by the defendant, are not exclusive. Rather, in the language of *Preston* they are simply ''examples'' of circumstances which may lead to the conclusion that the search as a whole was *reasonable.* █ The cases demonstrate that other circumstances surrounding an arrest may make it reasonable for a police officer to search a defendant's car without a warrant even after the defendant has been removed from the scene and hence can no longer use any hidden weapon or destroy any evidence in the car. The crucial question then becomes whether there may also be circumstances in which it is reasonable for the officer to continue searching the defendant's car without a warrant after it too has been removed from the scene and taken into police custody.

Perhaps the principal distinction between the two situations is that after the defendant's car has been impounded there is ordinarily ample time for the officers to obtain a search warrant. Upon closer analysis, however, this appears to be a distinction without a legal difference. We have seen that where the car was left at the place of the arrest and searched after the defendant's departure, the courts have not required the officers to obtain a warrant if the search was ''otherwise reasonable,'' citing *United States* v. *Rabinowitz* (1950) *supra,* 339 U.S. 56, 64. In that leading decision the high court observed (at p. 65) that ''A rule of thumb requiring that

a search warrant always be procured whenever practicable may be appealing from the vantage point of easy administration. But we cannot agree that this requirement should be crystallized into a *sine qua non* to the reasonableness of a search." Rather, the court stated (at pp. 65-66), "It is appropriate to note that the Constitution does not say that the right of the people to be secure in their persons should not be violated without a search warrant if it is practicable for the officers to procure one. The mandate of the Fourth Amendment is that the people shall be secure against *unreasonable* searches. It is' not disputed that there may be reasonable searches, incident to an arrest, without a search warrant. Upon acceptance of this established rule that some authority to search follows from lawfully taking the person into custody, it becomes apparent that such searches turn upon the reasonableness under all the circumstances and not upon the practicability of procuring a search warrant, for the warrant is not required."

*Rabinowitz* was cited with approval in both *Preston* (376 U.S. at p. 367) and *Burke* (61 Cal.2d at p. 578). Its rule has been reiterated by the high court (*Ker* v. *California* (1963) *supra,* 374 U.S. 23, 41) and we have embraced it in our decisions (e.g., *People* v. *Winston* (1956) 46 Cal.2d 151, 162-163 [293 P.2d 40]). There can be no doubt that it is applicable to the search and seizure situation before us: in a recent decision upholding, on a ground hereinafter discussed, the constitutionality of a search of a defendant's impounded automobile one week after his arrest, the United States Supreme Court stated, "It is no answer to say that the police could have obtained a search warrant, for '[t]he relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable.' *United States* v. *Rabinowitz,* 339 U.S. 56, 66 [94 L.Ed. 653, 70 S.Ct. 430]." (*Cooper* v. *California* (1967) *supra,* 386 U.S. 58, 62.) With this precept in mind, we shall examine a group of decisions on facts similar to those now before us.

In *Price* v. *United States* (D.C.Cir. 1965) 348 F.2d 68, 70, a burglar took two rolls of quarters and an envelope with the store owner's handwriting on it containing some $500 in bills. An eyewitness described the getaway car to the police, who found it parked about two hours later. Inside the car the ·officers saw the two rolls of quarters and some burglary tools. A few minutes later the defendant arrived and entered the car. The officers approached, questioned him about the tools,

and placed him under arrest. He was taken in a squad car to the police station, while an officer drove the defendant's car to the station parking lot. The tools and rolls of quarters were then removed from the car. About 20 or 25 minutes later Detective Baker went out to the parking lot and saw the lights of the defendant's car blinking. He discovered a man, apparently a friend of the defendant, reaching under the front seat of the car. The man was arrested and taken into the station. Detective Baker then returned to the car, searched it, and found under the front seat the envelope taken in the burglary. Each of these items was admitted over objection in a prosecution for housebreaking and grand larceny.

The circuit court affirmed the judgment of conviction. First, the court held the seizure of the tools and rolls of quarters was incident to the arrest even though it occurred in the police station parking lot, because these articles were seen by the officers at the time the arrest was made. Since the officers could lawfully have taken possession of this evidence when they arrested the defendant, the fact that they delayed doing so for reasons of convenience did not render the subsequent seizure unreasonable. This rule has been uniformly followed in other federal courts (*Rodgers* v. *United States* (8th Cir. 1966) 362 F.2d 358, 362), in the courts of California (*People* v. *Evans* (1966) 240 Cal.App.2d 291, 299 [49 Cal.Rptr. 501]) and in those of our sister jurisdictions (*State* v. *Putman* (1965) 178 Neb. 445 [133 N.W.2d 605, 609]).

The court upheld on two grounds the search of defendant's car by Detective Baker after it had been impounded in the police parking lot. To begin with, it was incident to the arrest of the man found reaching under the front seat, even though it was conducted after he had been removed from the scene, "for the sequence followed by the officer, that is, first taking the arrestee into the station, was a reasonable and practical one. . . ." Secondly, the search in the parking lot "was part of a *continuing series of events* which included the original arrest and continued uninterruptedly as lawful police investigation and action." (Italics added.) The United States Supreme Court denied certiorari. (382 U.S. 888 [15 L.Ed.2d 125, 86 S.Ct. 170].)

This emphasis on the "continuing series of events" between the arrest and the culmination of the search is found in a number of other contexts. In *Arwine* v. *Bannan* (6th Cir. 1965) 346 F.2d 458, the police maintained constant surveillance of two suspected burglars, Arwine and Thibodeau, for five days prior to May 10, 1959. On the evening of the latter

day Arwine and Thibodeau were followed as they drove through a business district several times, peering at the stores they passed. They parked their car and walked off in different directions. Shortly thereafter an explosion was heard in a nearby alley, and at 10:25 p.m. Arwine was arrested as he reentered the car. He was handcuffed and left in the car as a decoy for Thibodeau. The latter did not return, however, and at 1:45 a.m. the officers took Arwine and the car to the police garage. Once there, Arwine was ordered out of the car and it was searched in his presence; under the back seat were found a gun and burglary tools. These items were admitted in a prosecution for carrying a concealed weapon and possession of burglary tools.

In affirming a denial of federal habeas corpus relief after conviction in a state court, the circuit court distinguished *Preston* on its facts, cited *Rabinowitz,* and stated the issue to be whether the ''search of the car, in which Arwine had been sitting since his arrest, which was made at the police station in Arwine's presence, immediately after the car arrived there, was *unreasonable.''* (Italics added.) The court reviewed the facts surrounding the nighttime arrest and unsuccessful decoy, and concluded (at p. 468), ''Under these circumstances, it would have been rather foolish procedure for the police officers to conduct a search of the automobile in the dark when they first arrested Arwine, or while awaiting the return of Thibodeau; and when they determined that it was useless to wait any longer, there was no reason why, at that time of night, they should attempt to search under the back seat where Arwine was sitting.'' The court held (at pp. 470-471) that ''We are of the view that the arrest and search, in this case, were *units of an integrated incident,* and, regardless of hair-splitting distinctions of contemporaneity, were incident to the lawful arrest. Under these circumstances, we conclude that the search was not an unreasonable search, and was not unlawful in contravention of the Fourth Amendment; . . .'' (Italics added.) The United States Supreme Court denied certiorari. (382 U.S. 882 [15 L.Ed.2d 123, 86 S.Ct. 175].)

In *Trotter* v. *Stephens* (E.D. Ark. 1965) 241 F.Supp. 33, the police arrived outside the home of a rape suspect and found in the driveway a car fitting the description of the vehicle used to abduct the victim. The officers opened the car door and saw stains on the seats; they entered the house, saw stains on the defendant's shorts, and arrested him. The defendant drove one of the officers to the jail in the defendant's

car, and parked it outside. The police then arrested a codefendant. About two hours later, officers searched the defendant's car parked in front of the jail, and found the victim's billfold and bloodstains on a side panel and the back seat, both of which were removed for laboratory testing. This evidence was introduced against the defendant in a prosecution for rape.

In dismissing the defendant's petition for federal habeas corpus after conviction in a state court, the district court held that under the circumstances the search of the defendant's car two hours after his arrest and after it had been driven to the jail was not unlawful. The court distinguished *Preston* on its facts, and reasoned (at p. 41) that in the case before it "The car was obtained incident to and contemporaneous with [defendant's] arrest and the subsequent search of the car two hours later was merely *part of one continuous act*, even though interrupted by the arrest of [codefendant] in the interim." (Italics added.)

In *People* v. *Montgomery* (1964) 21 App.Div.2d 904 [252 N.Y.S.2d 194, 195], it appears the defendants were arrested in their car at a Brooklyn intersection, at which time a search of the vehicle was undertaken; "there was a brief, reasonable suspension of the search because of a situation which arose at the scene of the arrest and which made completion of the search at that place inadvisable"; and the car was removed to the station house, where a further search uncovered guns which were subsequently admitted in a prosecution for conspiracy and carrying a dangerous weapon. The New York court affirmed the judgment of conviction, holding that the search at the police station "was merely a *continuation* of the search initiated at the time and place of the arrest." (Italics in original.)

In *People* v. *Moschitta* (N.Y. 1966) 25 App.Div.2d 686 [269 N.Y.S.2d 70-72], "Defendant was arrested when it was ascertained that the registration plates on the automobile he was driving had been stolen. The interior of the car was searched at the scene of the arrest and defendant, driving his own car, was convoyed by two patrol cars to the police station. While defendant was being questioned in the station house, the arresting officer returned to defendant's car, which was parked outside, broke open the trunk and discovered a pistol. Defendant was subsequently indicted for possession of the pistol." The New York court reversed an order suppressing the evidence taken from the trunk of the car, holding that

the search at the police station "may be characterized as a *continuation* of the original search." (Italics added.)

Finally, in *State* v. *McCreary* (S.D. 1966) 142 N.W.2d 240, a telephone coin box was reported looted. Shortly afterwards the defendants were arrested in their car, on a cold winter evening on an open highway in South Dakota. After a cursory search of their persons, they were taken into custody and a deputy drove their car to the police station, parking it outside. While the defendants were being jailed, officers searched their car and found bags of money which were subsequently admitted in a prosecution for burglary.

Although reversing the judgment of conviction on unrelated grounds, the Supreme Court of South Dakota upheld the search of the defendants' car at the station as incident to the arrest. The court distinguished *Preston* on its facts, observing that in the case before it the car remained at all times under immediate police surveillance. Reviewing the circumstances of the arrest, the court concluded (at p. 247) that "Here the *need to clear the highway* and to protect the defendants from the elements as well as to afford the officers *better conditions for the search,* in the exercise of good judgment, reasonably required the brief delay of a more thorough search of the persons and effects [i.e., the automobile] of the defendants until the sheriff's office was reached." (Italics added.) The court held the search to be lawful, "Applying the test of reasonableness under the Fourth Amendment. . . ."[3]

---

[3] A further qualification of the *Preston* rule, not directly relevant here, has been developed in the cases. In *Trotter* v. *Stephens* (E.D. Ark. 1965) *supra,* 241 F.Supp. 33, the court emphasized the fact that the car in which the rape took place was itself "the principal clue in the investigation" (at p. 41) and "an instrumentality of the crime" (at p. 42). The implication is that when the police lawfully seize a car which is itself *evidence* of a crime rather than merely a container of incriminating articles, they may postpone searching it until arrival at a time and place in which the examination can be performed in accordance with sound scientific procedures. Thus in *People* v. *Talbot* (1966) 64 Cal.2d 691 [51 Cal.Rptr. 417, 414 P.2d 633], the defendant was taken into custody shortly after the discovery of the mutilated body of a murder victim. Parked near the defendant's residence was a car which appeared to have bloodstains on the right rear fender and trunk. A criminalist also examined the vehicle at the scene and found human blood in the bumper area. The trunk was sealed and the car was moved. Several days later the seals were broken and the trunk was opened; a gasoline can was recovered and dusted for fingerprints, and a blood analysis of various items was made. We upheld the lawfulness of the delayed search on the ground that the initial discovery of bloodstains on the car, "in conjunction with the surrounding circumstances, warranted a reasonable search of the entire automobile, and it was proper to seal the trunk for a later, more scientific examination as a part of the reasonable search process." (64 Cal.2d at p. 708; see also *People* v. *Miller* (1966) 245 Cal.App.2d 112, 140 [53 Cal.Rptr. 720].)

The foregoing cases illustrate the several distinctions between *Preston-Burke* and the case at bar. In both *Preston* and *Burke* the defendant was arrested without reasonable cause to believe him guilty of a serious felony, but simply because he gave an "unsatisfactory" explanation of conduct which appeared to the officer to be "suspicious." Here, the officers had ample reasonable cause to arrest defendant for a felony, based on their knowledge of an outstanding burglary warrant against him and his violent attempt to escape. In *Preston* no search of the defendant's car was conducted at the place of arrest; in *Burke* the officers did look inside the defendant's car while still at the scene, but nothing incriminating was found. Thus in each case the subsequent search at a different location was general and exploratory in nature, a search for evidence of a crime which the police did not yet know the defendant had committed. ██ Here, as we have seen, the officers lawfully began to search defendant's car at the scene of his arrest and found the highly incriminating balloon of heroin on the floor in front of the driver's seat. At that point they had convincing grounds to believe defendant was guilty of the crime of unlawful possession of narcotics, and accordingly had the right to continue searching his car as an incident to the arrest for the purpose of recovering further evidence by which the offense had been committed. These distinctions were drawn in such cases as *People* v. *Green, supra, Arwine* v. *Bannan, supra,* and *Trotter* v. *Stephens, supra.*

The principal difference between *Preston-Burke* and the case at hand, however, is in the circumstances at the scene of the arrest. In both *Preston* and *Burke* the scene was an apparently deserted business street during the early morning hours, with the defendants' car peacefully parked at the curb; in neither case was there any emergency which would have

Again, in *Johnson* v. *State* (1965) 238 Md. 528 [209 A.2d 765], the defendants were arrested in the car in which they allegedly kidnaped and raped the prosecutrix. At the time of the arrest an officer looked into the car and saw a gun and the victim's coat and purse, but "He did not touch anything, leaving the articles for further investigation." The car was towed to the police station, where a search disclosed another gun and additional belongings of the victim; three days later, sweepings and dust samples were also taken from the car. In upholding these delayed searches the Maryland court distinguished *Preston* on the ground that in the case before it the car "had been used as an instrument in the perpetration of the alleged crime"; accordingly, "The automobile itself could have been offered in evidence at the trial. Having lawfully seized it, the police had the right to examine it after the seizure for evidence in connection with the crime." (209 A.2d at p. 770.)

made it dangerous or otherwise *unreasonable* for the officers to have searched the entire car at the time and place of the arrest. Here a very different scene was presented. The events occurred on a busy thoroughfare in West Oakland, much earlier on a summer evening; the gunfire and subsequent crash of defendant's car had attracted a crowd so large that extra policemen had to be summoned and "controlled the mob that was forming." The danger of such a crowd to the preservation of evidence has been emphasized in the cases (*Boyden* v. *United States, supra*; *People* v. *Miller, supra*), and its presence is a significant factor here.

Furthermore, defendant's car was no longer safely stationed at the curb, but had collided head-on with a vehicle parked on the other side of the street; it had come to rest at an angle some four to five feet from that curb, partially blocking the oncoming traffic lane. We recently recognized that such a danger to motorists should be removed as quickly as possible. In *People* v. *Grubb* (1965) 63 Cal.2d 614, 618-619 [47 Cal. Rptr. 772, 408 P.2d 100], we upheld a search without a warrant of an apparently abandoned automobile found parked at night on the wrong side of a two-way street and protruding at an angle several feet into the roadway, "creating a traffic hazard to oncoming motorists." We distinguished *Burke* on the ground that "The instant facts give rise to one of 'the exceptions to the constitutional rule that a search warrant must be had before a search may be made,' " and stated, "A requirement that under circumstances such as these the officers must leave the car on the highway while they obtain a search warrant would abort their efforts to protect the safety of the highways."[4] This, too, is a significant factor in resolving the issue before us; as emphasized above, among the justifications for delaying further search of the defendants' car until arrival at the police station in *State* v. *McCreary, supra,* the court listed "the need to clear the highway." (142 N.W.2d at p. 247).

The movement of defendant's car, moreover, was accomplished in a manner designed to insure against any third party's tampering with the evidence: a police officer followed the tow truck in his squad car to keep it under surveillance during the trip, then stood guard over the car at the police

---

[4]Similar considerations would arise, for example, if the suspect's car was stopped or disabled on a freeway, bridge, tunnel, or other thoroughfare where *any* obstruction of the flow of traffic would create a substantial hazard.

parking lot until Officer Alves returned from the hospital. Such constant surveillance by officers who had been present at the scene of the arrest does not appear in *Preston* or *Burke,* a distinction stressed in such cases as *Arwine* v. *Bannan, supra,* and *State'* v. *McCreary, supra*; in its purpose and effect, it may be likened to the sealing of the trunk of the defendant's car in *People* v. *Talbot, supra.*

Finally, the search was promptly resumed. It will be remembered that Officer Alves had accompanied defendant, who was wounded in the gunfire, to the hospital. Immediately after returning to the station the officer went out to the police parking lot, where defendant's car had arrived only 15 minutes earlier. He then reopened the door of the car and found the remaining balloons and bindle. The brevity of the delay in concluding the search has been stressed in such cases as *Price* v. *United States, supra, Arwine* v. *Bannan, supra,* and *State* v. *McCreary, supra.*

■ We conclude that in view of the conditions at the scene of the arrest it was reasonable for the officers to interrupt the search of defendant's car until it could be moved to a safer location, away from the crowd and out of the line of traffic; that the search at the police parking lot, following a brief delay during which the car was under constant surveillance, should be deemed a continuation of the search lawfully begun at the time and place of the arrest; and hence that the entire search process was incident to that arrest and was not "unreasonable" within the meaning of the Fourth Amendment. Accordingly, it was not error to admit the evidence here challenged.

■ An alternate ground of decision, moreover, arises from the fact that in the present case the challenged evidence was found in the search of a vehicle used to store or transport narcotics. Health and Safety Code section 11611 makes it mandatory that such a vehicle be seized and delivered to the Division of Narcotic Enforcement "to be held as evidence" until a forfeiture has been declared or a release ordered.[5]

---

[5]Section 11611 provides: "Any peace officer of this State, upon making or attempting to make an arrest for a violation of this division, shall seize any vehicle used to unlawfully transport any narcotic or to facilitate the unlawful transportation of any narcotic, or in which any narcotic is unlawfully kept, deposited or concealed or which is used to facilitate the unlawful keeping, depositing or concealment of any narcotic, or in which any narcotic is unlawfully possessed by an occupant thereof, or which is used to facilitate the unlawful possession of a narcotic by an occupant thereof, and shall immediately deliver such vehicle to the Division of Narcotic Enforcement of the Department of Justice to be held as evidence until a forfeiture has been declared or a release ordered."

Here the officers had ample reason to believe that defendant was using his automobile to unlawfully store or transport narcotics at the time of his arrest, and they accordingly had the right and duty to seize and impound it. The case is therefore similar to *Cooper* v. *California* (1967) *supra*, 386 U.S. 58, in which the United States Supreme Court held that the search without a warrant of a vehicle impounded under section 11611, even though delayed until one week after the arrest, was not "unreasonable" within the meaning of the Fourth Amendment. ▮ It is irrelevant that the record does not also show that forfeiture proceedings were actually instituted; the trial record in *Cooper* was likewise devoid of evidence to that effect (see *People* v. *Cooper* (1965) 234 Cal. App.2d 587, 596 [44 Cal.Rptr. 483]). The controlling consideration, rather, is that at the time of the arrest the statute *required* the vehicle to be seized and held as evidence. As the Supreme Court stated in *Cooper* (386 U.S. at p. 61), "the reason for and nature of the custody may constitutionally justify the search."

Defendant's remaining contentions require little discussion. It is first argued that he was placed in double jeopardy by a retrial on the possession count after his acquittal on the count charging transportation of the same narcotics. ▮ But a retrial of a count on which the jury fails to agree is not "another prosecution" within the meaning of Penal Code section 1023, and hence is not barred by the double jeopardy doctrine. (*People* v. *Tideman* (1962) 57 Cal.2d 574, 583 [21 Cal.Rptr. 207, 370 P.2d 1007].) Defendant's counsel was therefore not derelict in his duty by failing to raise this "defense."

▮ Defendant's contention that there was no evidence to support his conviction of knowingly possessing narcotics is likewise devoid of merit. The red balloon was found between the points on the floor where his feet would normally rest, and he was the owner of the car and its driver and sole occupant at the time; moreover, as we have seen, defendant violently attempted to evade arrest when Officer Alves approached the vehicle and asked to speak with him. These circumstances amply support the inferences that defendant exercised dominion and control over the red balloon, knew of its presence, and knew the narcotic character of its contents. (*People* v. *Groom* (1964) 60 Cal.2d 694, 697 [36 Cal. Rptr. 327, 388 P.2d 359].)

■ Finally, defendant complains of the fact that the trial court chose to give the jury its instructions on circumstantial evidence at the beginning rather than the end of the trial; this procedure, however, is within the discretion of the court. (Pen. Code, § 1093, subd. 6; *People* v. *Jones* (1960) 184 Cal.App.2d 464, 473 [7 Cal.Rptr. 424].)

The judgment is affirmed.

Traynor, C. J., McComb, J., Tobriner, J., Burke, J., and Peek, J.,* concurred.

PETERS. J.—I concur. I do so because I feel bound by the rules announced by the Supreme Court in its recent decision in *Cooper* v. *California,* 386 U.S. 58 [17 L.Ed.2d 730, 87 S.Ct. 788]. I interpret that decision, as do the four dissenting justices (386 U.S. at p. 65), as overruling *Preston* v. *United States,* 376 U.S. 364 [11 L.Ed.2d 777, 84 S.Ct. 881]. No longer need a warrant be secured if a search is not incidental to a lawful arrest but is separated from the arrest both in time and space. A search is now permissible without a warrant if the vehicle is in valid police custody. In the instant case the vehicle was undoubtedly in the valid custody of the police. The search was, therefore, proper under *Cooper, supra.*

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.