**STATE of Missouri, Respondent,**

v.

**Udell MORRIS, Appellant.**

**No. 35975.**

Missouri Court of Appeals,
St. Louis District,
Division 4.

April 1, 1975.

Charles D. Kitchin, Public Defender, James C. Jones, Asst. Public Defender, St. Louis, for appellant.

John C. Danforth, Atty. Gen., K. Preston Dean, II, William F. Arnet, Asst. At-

tys. Gen., Jefferson City, Brendan Ryan, Circuit Atty., Arthur Friedman, Asst. Circuit Atty., St. Louis, for respondent.

ALDEN A. STOCKARD, Special Judge.

Udell Morris, charged under the Second Offender Act, § 556.280 RSMo 1969, V.A. M.S., with rape and robbery with a deadly and dangerous weapon, was found guilty by a jury and sentenced by the court to imprisonment for terms of thirty-five years for rape and fifteen years for robbery, the terms to be served consecutively.

There is no challenge to the sufficiency of the evidence. A jury reasonably could find from the evidence that at about 1:30 o'clock in the morning of April 21, 1973, as Doris Sellers started to enter her apartment at 425 Compton in St. Louis City, appellant grabbed her arm, placed a butcher knife at her throat and ordered her to accompany him to Chambers Park where he took from her a cocktail ring, a Bulova watch, and $32.00 in cash. He then took her behind some nearby houses and compelled her by threats to kill or injure her to have sexual intercourse with him.

Police officers found a butcher knife at the place where Doris Sellers stated the rape occurred, and she gave the police a detailed description of her assailant. About 5:00 o'clock that afternoon the police took Ray Morris into custody and he was placed in a lineup with three other persons. Doris Sellers stated that Ray Morris resembled her assailant, but that he was not the one. After some questioning by the police, Ray Morris told the police that it was his brother, Udell Morris, the appellant, whom they wanted, and that he had boarded a bus for Detroit earlier that day. The police then showed Doris Sellers five photographs of different persons, none of whom had been in the previous lineup, but one of whom was Udell Morris. She immediately identified appellant as her assailant.

Police Officer Don Hardy of the St. Louis Metropolitan Police Department called the Detroit, Michigan Police Department by telephone about 8:00 o'clock of that same evening and told Sergeant James Hardy (a coincidence of names) that he was Detective Hardy, St. Louis Police Department, and he further identified himself by stating his badge number. Officer Don Hardy told Sergeant James Hardy that appellant was wanted in St. Louis for rape and for robbery, and gave him a description of appellant as to age, size, weight, color and how he was dressed. Officer Don Hardy had previously talked to Doris Sellers, he had observed the lineup in which Ray Morris was present, and it was he that Ray Morris had told that it was appellant the police wanted and that appellant was on a bus on his way to Detroit. It was also Officer Don Hardy who showed the five photographs to Doris Sellers when she immediately identified appellant from his photograph as her assailant.

Officers James Hardy and Harry Barnes of the Detroit Police Department met the bus, and when appellant alighted, Officer Barnes identified himself and asked appellant if he had any identification. Appellant produced a Missiouri drivers' license with the name of Udell Morris, and Officer Barnes told him he was under arrest, and that he was wanted in St. Louis for rape and robbery. He was there "padded down" for weapons but not searched. At the station appellant was told to take everything out of his pockets and place them on the counter. The police intended to place him in the detention cell, and pursuant to the rules of the police department the officers wanted to be sure he had nothing with him, such as "narcotics, pins, needles, whatever." After appellant purportedly emptied his pockets the police searched him, and in his "back" pocket they found a woman's white gold Bulova watch. He was then asked if he had anything else, and he handed the officer a woman's ring. This watch and ring were subsequently identified by Doris Sellers as

the watch and ring that had been taken from her in the robbery.

Appellant's first three points are that the trial court refused to suppress the evidence, watch and ring, taken from him at the time of his arrest because (a) "that arrest was invalid and illegal under Michigan law," (b) the officers "who instigated it [the St. Louis police officers] lacked legally cognizable probable cause," and (c) the court erred in overruling his motion to suppress evidence "without making findings of fact and law."

■ We shall briefly dispose of the contention that the St. Louis police officers "lacked legally cognizable probable cause" to cause the arrest of appellant for the robbery and rape of Doris Sellers. She had reported the occurrence of the two offenses to the police, and they found at the place of the rape the butcher knife that she had said was held and used by her assailant. In addition, she had given the officers a detailed description of her assailant which matched that of appellant, and she had immediately picked his photograph from a group of five photographs. Other facts that could have been considered by the police in their determination of probable cause were the statement of Ray Morris and the flight of appellant from the St. Louis area.

"Probable cause does not require absolute certainty that an offense had been committed. United States v. Valentine, 427 F.2d 1344 (8th Cir. 1970). The information in the possession of the arresting officer need not be that quantum of proof necessary to sustain a conviction." State v. Perry, 499 S.W.2d 473, 476 (Mo.1973). There is no question but that if the St. Louis police officers had located appellant preparing to board the bus for Detroit they would have had probable cause to then arrest him for the rape and robbery of Doris Sellers.

The important issue here is whether the arrest of appellant in Detroit by the Detroit police was a lawful arrest.

■ The law of the place of the arrest governs the legality of the arrest, United States v. Morris, 445 F.2d 1233 (8th Cir. 1971); State v. Klein, 25 Wis.2d 394, 130 N.W.2d 816 (1964), when consistent with minimum standards of the Fourth Amendment of the United States Constitution.

Section 764.15, M.C.L.A. provides that any peace officer may, without a warrant arrest a person when a felony has in fact been committed and he has reasonable cause to believe such person has committed it, or when he has reasonable cause to believe that a felony has been committed and has reasonable cause to believe that such person committed it.

■ There is authority that when a police officer makes an arrest on the basis of a message received over the police radio, the question of probable cause is to be adjudged upon the full information which caused the message to be sent and not on the message alone. See the new paragraph to § 46 in current pocket parts of 5 Am. Jur.2d, Arrest, and People v. Webb, 66 Cal.2d 107, 56 Cal.Rptr. 902, 424 P.2d 342 (1967). This would be equally true as to a reliable telephone communication from one police officer to another, and as above stated, Officer Hardy of the St. Louis Police Department had probable cause to make or order the arrest. The United States Supreme Court has recognized this basic principle, but it has not been so succinctly stated.

In Whitely v. Warden of Wyoming State Penitentiary, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), the Carbon County sheriff placed an item on the radio to pick up two persons suspected of breaking and entering and for which a warrant for arrest had been obtained. Pursuant to that radio communication the defendant was arrested by a deputy sheriff at Laramie, Wyoming. The arrest was ruled to have been illegal because the warrant, which formed the basis of the message, was defective; it lacked probable cause on the part of the issuing magistrate. In the course of the opinion, it was said: "We do

not, of course, question that the Laramie police were entitled to act on the strength of the radio bulletin. Certainly police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause. Where, however, the contrary turns out to be true, an otherwise illegal arrest cannot be isolated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest." In Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed. 2d 327 (1959) an informer, by the name of Hereford, sometimes paid for his services, informed a narcotics agent by the name of Marsh that the defendant would arrive in Denver by train with heroin in his possession, and Hereford furnished a complete description of the defendant. The court ruled that Marsh had probable cause to arrest defendant when he alighted from the train even though the information in his possession was hearsay. It was there stated: "There is a large difference between the two things to be proved [guilt and probable cause], as well as between the tribunals which determine them, and therefore a like difference in the *quanta* and modes of proof required to establish them." Quoting from Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949), it further said: " 'In dealing with probable cause . . . as the very names implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' "

■ In this case the St. Louis police officer was pressed for time. He completed his investigation after 8:00 o'clock in the evening, and appellant was already on the bus and was to arrive in Detroit in a few hours. Under these circumstances, it was reasonable to contact the Detroit police by telephone and ask their assistance in apprehending appellant. In fact, it would have been a dereliction of duty on the part of Officer Don Hardy not to use a means of communication which assured him that the information would get to the correct person in time to take the necessary and proper action. Just as in Whitely v. Warden of Wyoming State Penitentiary where the court held that the Laramie police were entitled to rely on the strength of the radio bulletin, in this case the Detroit police were entitled to rely on the strength of telephone communication from a reliable source, an officer of the police department of St. Louis. Although in the Whitely case it subsequently developed that the radio bulletin was based on a warrant issued without probable cause, in this case the telephone communication was in fact based on information in the possession of the communicator that constituted probable cause to make an arrest without a warrant.

■ The Bulova watch and ring were obtained by the Detroit police as an incident of a lawful arrest, and therefore were not subject to being suppressed as evidence.

■■ Appellant admits that there is no requirement in this state that the trial court enter a record findings of fact and conclusions of law when it overrules a motion after a hearing to suppress evidence. More important, however, appellant made no such request and therefore, in any event he cannot now claim any error on the part of the trial court.

■ Appellant's final contention is that the trial court erred in refusing testimony concerning a statement made by him at the time of his arrest.

· Sergeant Barnes of the Detroit police testified at the hearing to suppress the statement that after he asked appellant for and had been shown identification, he told appellant that he was under arrest, and that he was wanted in St. Louis for rape and robbery. According to Sergeant Barnes, appellant then said: "Goddamn, how did you get me so fast?" Appellant

testified at the hearing on the motion to suppress to the same sequence of occurrences, but that the statement made by him was: "Goddamn, What have I done now?"

It was after appellant made this statement, whichever it was, that he was given the "Miranda" warnings. But, the testimony of Sergeant Barnes and also that of appellant clearly shows that the statement was spontaneous and voluntary on his part, and that it was not made as the result of any question asked him by any police officer. Therefore, the statement of appellant as related by Sergeant Barnes (appellant did not testify at the trial and the jury did not hear his version of what he claims he said) to the jury was not subject to being suppressed by reason of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). See Lewis v. State, Mo., 501 S.W.2d 20 (1973); State v. Hyster, Mo., 504 S.W.2d 90 (1974).

The judgment is affirmed.

SMITH, C. J., and NORWIN D. HOUSER, Special Judge, concur.